CURTIS RAY ROBERTS v. STATE

No. 33,404.    June 21, 1961
Motion for Rehearing Overruled February 7, 1962

*Murray J. Howze,* Monahans, and *Lucius Bunton,* Odessa, for appellant.

*R. B. McGowan, Jr.,* District Attorney, Monahans, and *H. D. Glover,* County Attorney, Pecos, and *Tom L. White,* Monahans, and *Leon Douglas,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The conviction is for robbery with firearms; the punishment, death.

The trial was had in Ward County on a change of venue from Reeves County.

The testimony of Kenny Richards, the assaulted party, that of Officer Gilbert who saw the appellant and his companion leaving a service station, and of Highway Patrolmen Blanchard and Martin, who apprehended appellant and his companion at a road-block, and appellant's written statement, show that appellant and his companion entered a service station where the assaulted party was on duty alone about 1:30 A.M.; that appellant, while pointing a pistol toward Richards, ordered him into the rest room and to lie on the floor and later said to Richards "That's right, you better look at me good because you won't remember me." Upon their failure to open the cash register, which according to the testimony of Richards contained "between $40 and $50 * * * mostly in bills", the appellant ordered Richards to open it which he did and resumed his position on the floor in the rest room. Next, Richards heard the appellant say "How much is in there?" which was followed by "two shots". At once, Richards realized he had been shot because he began "quivering all over and I saw stars" and was bleeding from the back of the head. As appellant and his companion left Officer Gilbert drove into the station, observed Richard's condition and by radio notified other officers, and then pursued the two men he saw leaving the station but they soon evaded him and he returned to the station. An ambulance soon arrived and took Richards to a hospital.

In response to a call, two highway patrolmen shortly after 5 A.M. apprehended the appellant and his companion when they stopped a motorist with whom the appellant and his companion had obtained a ride a short time before. Upon searching the appellant, they found a .22 pistol containing two spent and 4 live shells in his right front pocket, and a search of the companion

showed that he had $45 or $46 or $47 "* * * in bills" and some change.

Deputy Sheriff Briggs of Reeves County in which the robbery occurred, testified that Highway Patrolmen Blanchard and Martin delivered the appellant and his companion to him and Officer Ingram in Pecos, and also delivered to them a .22 pistol and two spent and four live shells and "43 $-bills, 5 half-dollars, 3 quarters, 11 nickles, and 3 dimes".

Appellant's written statement made to H. D. Glover, County Attorney, pertaining to the robbery of Kenny Richards and witnessed by Glover and Deputy Sheriff Gilbert was introduced in evidence by the state and omitting the formal parts reads:

"* * * My name is Curtis Roberts and I am 19 years of age; I was born in Hillsboro, Texas and at present I consider the following address my home: Midland, Texas.

"On the 12th of June, 1960, Bennie drove us to Pecos. When we got to Pecos, we pulled into a station and got some gas. We left the station and went over to another station to rob the old boy there. We parked the car behind the building and went inside to where the man was. When we got inside, I pulled a gun on the fellow and told him it was a hold-up. Then Bennie unlocked the cash register got the money. I was holding the gun on the man there. I then told the man to lay down on the floor and he did. The cash register was opened by the man there first and not by Bennie. The boy started to get up and I shot him three times. I do not know where I shot him. Bennie gave me the gun when we got ready to go into the station. Then we went out the door and started to go to the car and saw the police and then we started to run and went to the tracks and then went east till we got to a road side park and saw a man going to Alabama and he gave us a ride. We hadn't been gone long when the highway patrol stopped us and arrested us.

"When I shot the man, I meant to kill him so that he could not identify us. I thought he was dead when we left the station. Just before I shot the man, Bennie said, 'Shoot him Curtis, Shoot him.'"

Testifying in the absence of the jury, the appellant admitted signing the statement introduced in evidence by the state, but said the statement is not true; that it was made through fear and promises and that at the time in question he was drunk due to the

use of marihuana and he did not know whether he robbed or shot the boy.

Appellant called one witness who testified that he was in jail when appellant was first brought in; that appellant's face was bruised and swollen, and his skin had been peeled over his ribs, back and arms, and that his nose was bleeding.

The voluntary character of appellant's written statement was submitted to the jury in the court's charge.

The evidence sufficiently warrants the jury's finding that the appellant committed the offense of robbery with firearms as alleged in the indictment.

Appellant contends that the indictment is fatally defective because the property description: "U.S. Currency" is insufficient. It complies with language of the robbery statute which prohibits in the ways therein described the taking from the possession of another *any property* with the intent to appropriate it to the use of the taker. The taking of any sum of U.S. currency by robbery is an offense. Art. 1408, P.C.

It is insisted that the court erred in admitting in evidence the testimony of the physician who examined the injured party shortly after 2 A.M. over his objection to any evidence of his condition with reference to the bullet wounds in the head on the ground that it was not material to any issue in the case and was inflammatory and prejudicial.

The physician testified that his examination of the injured party showed he had been shot twice in the back of the head, that powder burns were found in the area, that one bullet passed out but left metal fragments and the other lodged below the skull which he did not remove as it would cause excessive bleeding. By using an X-ray plate he pointed out the entry and the location of the metal fragments and the bullet.

The indictment charged robbery by assault, violence, and putting in fear by use of a pistol. To which charge the appellant entered a plea of not guilty.

In Fields v. State, 160 Texas Cr. Rep. 498, 272 S.W. 2d 120, we said:

"Appellant further contends that, since the 'State had

abundantly and completely established every essential element of * * * the count charging Robbery with a Deadly Weapon,' then it constituted error for the court to admit evidence as to the injuries received by the injured party during the course of the robbery. He relies upon those authorities which hold that the exhibition to the jury of scars which tend to solve no disputed issue constitutes error but such authorities are not deemed applicable here.

"The indictment charged robbery by assault, violence, and putting in fear. The state had the right to prove all three. On the allegation of violence the State may prove the injuries sustained as the result of such violence. In fact, such is the best proof thereof."

The admission of the testimony of the physician under the allegations of the indictment does not show error.

It is insisted that the trial court erred in overruling the motion for new trial in which the appellant alleged that one of the jurors was prejudiced against him and concealed this fact on his voir dire examination thereby preventing a fair and impartial trial. This allegation was not presented by an affidavit attached or referred to in the motion for new trial and said motion was not sworn to.

This complaint is not presented by a formal bill of exception. In order to preserve the matter complained of for review, a formal bill of exception is required. Waggoner v. State, 161 Texas Cr. Rep. 242, 275 S.W. 2d 821; Alejandro v. State, 161 Texas Cr. Rep. 411, 277 S.W. 2d 717.

Appellant contends that the trial court erred in refusing his motion for a new trial which alleged that the jury during their deliberations discussed whether the appellant had been in trouble before, his failure to testify in the presence of the jury, the effect of parole on their verdict, and the expense of the trial or retrial of the case and that such discussions require a reversal.

In support of his allegations of misconduct of the jury while deliberating the appellant first called Juror Hill. He testified that someone in the jury room said something about the expense of the trial, and also about how soon appellant would get out if they assessed the punishment at a term of years, and that they asked the judge about the parole system and he did not give them any information.

Juror Cameron, one of the affiants, stated in her affidavit that the appellant's failure to testify was only casually mentioned in the jury room, yet, it remained in her mind.

The affidavit of Juror Thresher shows that the jury discussed the effect of parole on their verdict, that no evidence was offered to refute the confession, and they also discussed whether he had previously been in trouble as there was no evidence he had not.

Juror Wells in his affidavit states that the jury discussed the parole system and the effectiveness of certain sentences.

In rebuttal the state called as a witness Juror Cameron whose affidavit was attached to appellant's First Amended Motion for New Trial, and she testified that there was no discussion of appellant's failure to testify; and that they did not talk about whether this was appellant's first or second offense.

The state also called Juror Wells whose affidavit the appellant had offered in evidence. He testified that there was no further discussion of the effect of the parole system after their appearance before the judge in response to the jury's written inquiry about parole.

The evidence raised fact issues as to the allegations of jury misconduct, therefore the decision on the motion for new trial was within the sound discretion of the trial court who heard and observed the jurors who testified at the hearing together with the consideration of the affidavits introduced in evidence, and in the absence of an abuse of discretion, this court would not be justified in reversing the judgment. It is concluded that the action of the trial court is supported by the evidence presented and that he did not abuse his discretion in overruling the motion for a new trial. Smith v. State, 167 Texas Cr. Rep. 454, 320 S.W. 2d 680.

The judgment is affirmed.

Opinion approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Presiding Judge.

Appellant urges that there is no evidence outside of the confession that any robbery occurred or, in other words, that there was no proof of the corpus delicti. We do not agree.

Kenny Richards was the night attendant at the Conoco Station and, after 8 P.M., was on duty alone. He testified that he had custody, management and control of all money taken in and on hand; that he had between $40 and $50 in the cash register, mostly in bills. He was ordered to open the cash register after appellant's companion was unable to get it open. After he had resumed his position on the floor in the rest room, as he was directed to do, he heard appellant ask his companion who was at the cash register after he had opened it "How much is in there?" Then he was shot. From this time Richards directed his attention to saving his life and did not notice the cash register again.

Officer Gilbert saw appellant and his companion walk out of the front door of the station. "They walked very nonchalent like. They didn't allow me to see their face, but I was able to see they were negroes. And they didn't run immediately. They walked very nonchalantly around the corner as I turned, and when I drove into the station is when they ran." As he drove in he saw Kenny Richards crawling out of the rest room in a dazed and bloody condition. He called headquarters and pursued the men he had seen running, and after receiving a report from another unit in regard to them, returned to the Conoco Station and found Kenny Richards staggering, dazed and incoherent.

Officer Gilbert testified that the cash register drawer was open and appeared to be empty. He further testified that to his knowledge there was no one around the station from the time he saw the Negro boys run out of it, other than Kenny Richards.

We do not regard the fact that neither Kenny Richards nor Officer Gilbert made a detailed examination of the cash register, so as to be in position to testify that the money was gone, as fatal to the state's case. As Officer Gilbert testified, he was "a great deal more alarmed and concerned about the condition of the boy than — about the contents of the cash register."

While the 40 one dollar bills taken from the pocket of appellant's companion could not be identified, the evidence mentioned aided by appellant's confession is, we hold, sufficient to sustain the conviction for the offense of robbery as charged.

The confession may be used in connection with other facts to establish the corpus delicti. Hignett v. State, 170 Texas Cr. Rep. 342, 341 S.W. 2d 166; Watson v. State, 154 Texas Cr. Rep. 438, 227 S.W. 2d 559, and cases there cited.

Appellant's learned counsel forcefully argues that, this being a death penalty case, we should consider his contention that appellant was denied due process of law because one of the jurors was prejudiced to the extent of corrupting the panel.

As pointed out in our original opinion, the complaint that the juror was prejudiced against appellant and concealed this fact on his voir dire examination is not presented by formal bill of exception. We note further that the record does not show the voir dire examination of the jurors, and the only reference to the complaint that the juror was prejudiced appears in the motion for new trial and the evidence introduced in connection with the claim of jury misconduct.

Appellant's counsel has presented a supplemental transcript including a bill of exception he has presented to the trial court since our original opinion was handed down. He presents affidavits in connection therewith which he contends show sufficient reason why the late filing thereof should be excused.

We have examined the tendered bill of exception and note that the trial judge has certified that had it been presented to him during the time allowed by statute it would have been approved with the qualification that the court found and determined that the juror in question was not a prejudiced juror.

We remain convinced that the record before us does not show that the juror was prejudiced against appellant and concealed such fact on his voir dire examination.

It would avail appellant nothing if we could consider his bill of exception with the trial court's qualification. He would be bound by the certification that the juror was not a prejudiced juror.

We commend court appointed counsel for his earnest efforts in appellant's defense, but are unable to agree that the conviction should be set aside.

Appellant's motion for rehearing is overruled.