**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Archie Spencer CROSS, Defendant-Appellant.**

**No. 29061.**

United States Court of Appeals, Fifth Circuit.

Jan. 25, 1971.

A. J. Lewis, Jr., San Antonio, Tex. (Court-appointed) for defendant-appellant; Foster, Lewis, Langley, Gardner & Hawn, San Antonio, Tex., of counsel.

Seagal V. Wheatley, U. S. Atty., Jeremiah Handy, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before GEWIN, MORGAN and ADAMS,* Circuit Judges.

GEWIN, Circuit Judge:

Appellant Archie Spencer Cross appeals from a judgment of conviction for transporting in interstate commerce a motor vehicle known to be stolen in violation of the Dyer Act, 18 U.S.C. § 2312. After a pre-trial hearing the court denied appellant's motion to suppress evidence obtained pursuant to an alleged unlawful search and seizure. Following the denial of the motion to suppress, the trial was held by the court without a jury. We affirm.

The evidence presented at the hearing on the motion to suppress established the following facts. At midday on July 21, 1969 Detective White of the San Antonio, Texas Police Department talked with an informer who told him that a man attired in "cowboy clothes" and driving a maroon or brown Pontiac convertible with out-of-state license plates might be dealing in or selling narcotics at the Chocolate Bar Restaurant in San Antonio.

Since the informer had provided reliable information on several occasions during a prior three month period, Detective White proceeded to the Chocolate Bar to investigate. At approximately 3:55 p.m. he spotted a car in the vicinity of the Chocolate Bar that fit the description given by the informer and he began to follow it. As he did so he noticed that the driver of the car was wearing a cowboy hat, and that the license plates on the car were not only from out-of-state, but also in a suspiciously battered condition.[1] He also recognized a passenger in the car whom he knew to be a narcotic addict.

After proceeding a few blocks the car in question turned abruptly to the side of the street and parked in front of the Poco Hotel. Detective White simultaneously pulled in behind the automobile and signalled for Cross to remain in the car. Detective White then got out of his car, identified himself to Cross, and asked to see his driver's license. When Cross was unable to comply, Detective White placed him under arrest for operating a motor vehicle without a driver's license and requested that he follow him to police headquarters. Cross agreed to follow, but enroute to the police station he attempted to escape by turning onto a side road. After a short chase, however, he was apprehended, handcuffed and taken to the police station. There Cross's automobile was searched without a warrant, and the vehicle identification number was obtained from the front door post. This number was used to verify the ownership of the automobile and led to the information that it had been stolen in Cleveland, Ohio.

Cross urges that the use of the vehicle identification number to connect him with the stolen vehicle was improper because it was the fruit of an illegal search. Arguing alternatively, he asserts first that the arrest itself was illegal for lack of probable cause; or that, even if there was probable cause, the

---

* Of the Third Circuit, sitting by designation.

1. Detective White testified that the condition of the license plates was unusual because the area of the vehicle under and around the license plates was not damaged.

search of the automobile at police headquarters was too remote in time and place from the arrest itself. The trial court denied the motion to suppress taking the view that the arresting officer had the right to demand to see appellant's driver's license and the legal duty to arrest him for unauthorized driving when he failed to produce a license. The court concluded that once Cross was lawfully arrested and his automobile placed in custody, the officer had the right to secure the vehicle identification number.

■ We are in agreement with the reasoning of the trial court and its application of the pertinent search and seizure cases to these facts.[2] In the first place it was certainly permissible for the arresting officer to approach appellant in his parked automobile and ask for his driver's license.[3] In United States v. Marlow[4] we discussed precisely this point and said:

> In Texas, as elsewhere, a peace officer may request a driver of a vehicle to show his driver's license. See Vernon's Civil Statutes of Texas Annotated, Art. 66876, Sec. 13. The demand for the license or other identification [is] justified and [does] not constitute a custodial search or arrest.[5]

In the circumstances presented the officer had ample basis for the arrest when Cross was unable to produce the requested license. Moroever, considering all the circumstances of this case, —the information of the informer, the presence of a known addict, the suspicious condition of the out-of-state automobile license plates, the absence of a driver's license, and appellant's attempted escape from custody—Detective White certainly had legitimate reasons to question the ownership of the automobile, and to check its identification number. In United States v. Johnson[6] we held "* * * that where there is a legitimate reason to do so the mere checking of the serial number of an automobile in order more positively to identify it is not a search within the prohibitions of the Fourth Amendment."[7]

■ Appellant's further contention that the search of the automobile at the police station following the arrest was too remote in time and place from the arrest itself is not well taken in light of Cooper v. California.[8] In Cooper the search occurred one week after the arrest of the petitioner and at a place some distance removed from the place of arrest. The Court distinguished its former decision in Preston v. United

---

2. The trial court discussed and relied on United States v. Johnson, 431 F.2d 441 (5th Cir. 1970) and Weaver v. United States, 374 F.2d 878, 881 (5th Cir. 1967).

3. Appellant's reliance on the principles enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) is misplaced. In *Terry*, the Court was concerned chiefly with determining the lawfulness of a police "stop and frisk" procedure when measured by Fourth Amendment standards. By contrast, in the instant case the facts do not require us to deal with the principles announced in *Terry*. Here we are not dealing with a "stop and frisk" situation, but simply with the request of an officer to the driver of a parked automobile to display his driver's license.

4. 423 F.2d 1064 (5th Cir. 1970).

5. Id. at 1065. See also: United States v. Reid, 415 F.2d 294, 296 (10th Cir. 1969); Jennings v. United States, 391 F.2d 512 (5th Cir. 1968); Welch v. United States, 361 F.2d 214, 215 (10th Cir.) cert. den. 385 U.S. 876, 87 S.Ct. 153, 17 L.Ed.2d 103 (1966).

6. 413 F.2d 1396 (5th Cir. 1969) affirmed en banc 431 F.2d 441 (1970).

7. Id. 1399–1400. See also: United States v. Hull, 437 F.2d 1 (5th Cir. 1971); United States v. Lowery, 436 F.2d 1171 at 1174, 1175 (5th Cir. 1970); United States v. Williams, 434 F.2d 681 (5th Cir. 1970); United States v. Hopkins, 433 F.2d 1041 (5th Cir. 1970); United States v. Polk, 433 F.2d 644 (5th Cir. 1970).

8. 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

States,[9] and emphasized that in determining whether a search and seizure is unreasonable the question is, always and ultimately, the reasonableness of the police activity under the facts and in the circumstances of each case. Judged by that standard, we think the trial judge correctly concluded that the conduct of the arresting officer did not violate the Fourth Amendment.[10]

We have given full consideration to all of appellant's contentions in light of the foregoing authorities. We are firmly convinced that there was probable cause for his arrest and that the evidence obtained by the use of the vehicle identification number was properly admitted into evidence.

The judgment is affirmed.

---

9. 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

10. Moreno-Vallejo v. United States, 414 F.2d 901, 904 (5th Cir. 1969).