**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Raymond W. LOWERY, Defendant-
Appellant.**

**No. 29114.**

United States Court of Appeals,
Fifth Circuit.

Dec. 11, 1970.

Certiorari Denied March 22, 1971.
See 91 S.Ct. 1208.

Charles E. Hughes, Jackson, Miss., for defendant-appellant.

Robert E. Hauberg, U. S. Atty., E. Donald Strange, Daniel E. Lynn, Asst. U. S. Attys., Jackson, Miss., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, WISDOM and MORGAN, Circuit Judges.

WISDOM, Circuit Judge:

Raymond W. Lowery was convicted by a jury on a one-count indictment charging him with transporting in interstate commerce a stolen 1964 Ford Mustang automobile knowing it to have been stolen, in violation of 18 U.S.C. § 2312.[1] He was sentenced to serve five years in the custody of the Attorney General. We affirm.

On May 2, 1969, Mrs. Marilyn Edwards, the manager of the Drake Motel in Jackson, Mississippi, reported to the local office of the Federal Bureau of Investigation that a man, later identified as Raymond W. Lowery, had registered at the motel under the name of Dr. H. F. Mitchell and paid his bill using a Phillips 66 credit card issued to Dr. Mitchell. She explained that she had telephoned the Phillips 66 home office

---

1. § 2312. *Transportation of stolen vehicles*
 Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

and learned that Dr. Mitchell's credit card had been reported stolen. F.B.I. Special Agent Ronald L. Johnson then reported this information to the Jackson Police Department, which dispatched two detectives to the Drake Motel to investigate. The detectives, Lavelle Tullos and John Moulder, arrived at the motel and learned from Mrs. Edwards that a man had registered under the name of Dr. H. F. Mitchell and had used a re-. portedly stolen credit card to pay the bill. Mrs. Edwards also advised the detectives what room the man and his party occupied. Accompanied by four F.B.I. agents, the two detectives proceeded to that room and knocked on the door. Orbie Renfroe answered the door and invited the officers into the room. In the room were also Lowery and an unidentified woman. The officers identified themselves, stated that they were there in regard to a forgery involving a stolen credit card and then arrested all three occupants of the room. At the trial Mrs. Edwards identified Lowery as the man who had registered under the name of Dr. Mitchell and presented the stolen credit card. It is undisputed that at the time of the arrests the officers possessed neither an arrest nor a search warrant.

The officers then took Lowery and his companions to the City Jail where several officers questioned them. During the course of these interrogations, the officers learned that Lowery had traveled from California to Mississippi in a 1964 Ford Mustang automobile and that the Mustang was then located at Morton, Mississippi, approximately 45 miles from Jackson. Lowery explained that the Mustang was not his but that he had obtained the use of the automobile from a friend in Long Beach, California, by paying him $50. F.B.I. Agent Johnson, acting again without a warrant, drove to Morton to inspect the Mustang. A telephone call to California revealed that the license plates on the Mustang had been reported stolen and, in any event, did not belong on the Mustang. Johnson then ascertained the Mustang's vehicle

identification number, a check of which revealed that the automobile itself had been reported stolen. This Dyer Act prosecution followed.

### I.

Lowery argues first that his arrest without a warrant, subsequent interrogation, and the search of his automobile were illegal; thus the evidence obtained as a result—presumably his statements to the police officers and the Mustang's vehicle identification number—should have been suppressed.

 The validity of an arrest for a state offense by state officers is determined by state law so long as that law does not violate federal constitutional standards. Ker v. California, 1963, 374 U.S. 23, 37, 83 S.Ct. 1623, 1632, 10 L. Ed.2d 726, 740; see Lathers v. United States, 5 Cir. 1968, 396 F.2d 524. Under Mississippi law a police officer may arrest any person without a warrant when the arrested person

> has committed a felony, though not in his presence, or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested.

Code of Mississippi, 1942, Title 11, § 2470. See Canning v. State, 226 So.2d 747 (Miss.1969); McCollum v. State, 197 So.2d 252 (Miss.1967).

 The facts amply demonstrate that the police officers acted within the limits of the statute in arresting Lowery without a warrant. Mrs. Edwards had reported to the F.B.I. that Lowery had registered at the motel under the name of Dr. Mitchell and paid his bill with a credit card issued to Mitchell. She said that she had telephoned the oil company issuing the card and discovered that the card had been reported stolen. She repeated that information to the local police officers when they arrived at the motel. The police officers found Lowery

in the room registered in the name of Dr. Mitchell. We hold that those facts provided the police officers with "reasonable ground" to believe that a forgery [2] had been committed in connection with the use of a stolen credit card and that Lowery had committed it. *See* United States v. Lipscomb, 5 Cir. 1970, 435 F.2d 795.

■ Similarly, Lowery's arrest without a warrant was not unconstitutional under Fourth Amendment standards. An arrest without a warrant is constitutionally valid if at the moment the arrest was made the arresting officers had probable cause to make it. Beck v. Ohio, 1964, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145. Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed. Draper v. United States, 1959, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327, 332; Carroll v. United States, 1925, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555. We hold that in this case probable cause existed to justify Lowery's arrest without a warrant. *See* United States v. Lipscomb, 5 Cir. 1970, 435 F.2d 795.

### II.

■ Lowery contends that his interrogation was illegal and that the information elicited from him should have been suppressed. Specifically, he argues that the police officers interrogated him for several hours before advising him of his constitutional rights and that they then coerced him into signing a waiver of rights form. At the hearing on the motion to suppress, however, the two Jackson detectives who arrested Lowery testified that they administered the required *Miranda* warnings before interrogating him and that they made no threats toward him. As a matter of fact, Lowery made no statement at that time, and the detectives did not testify at the trial. F.B.I. Agent Johnson testified that he interviewed Lowery on the morning after his arrest. Johnson said that before interviewing him, he had Lowery read and execute a waiver of rights form. The signed waiver form was later introduced into evidence at the trial. Johnson testified that Lowery said that he understood the waiver of rights form and had no objection to being interviewed without an attorney because he had nothing to hide. This testimony led the district court to conclude that despite Lowery's vague accusations the interrogating officers fully advised him of his constitutional rights and that he voluntarily waived those rights, as indicated by the waiver form he signed. We agree and hold that the district court did not err in failing to suppress evidence of the statements that Lowery made during the course of these interrogations.

### III.

■ The district court did not err in failing to suppress evidence of the vehicle identification number of the stolen 1964 Mustang. Lowery contends that the F.B.I. agent's search of his automobile without a warrant was illegal and that the evidence obtained—presumably the vehicle identification number—should have been excluded. We cannot agree.

First, F.B.I. Agent Johnson testified that Lowery told him that he had no objection to the agent's search of his automobile to determine the proper owner. Second, the only evidence obtained as a result of that search was the Mustang's vehicle identification number. This Court has recently held that it is not unreasonable for police officers, if they are entitled to be on the property

---

2. Under Mississippi law forgery is a felony, as it is punishable by imprisonment in the state penitentiary. *See*

Code of Mississippi 1942, Title 11, § 2187.

where the automobile is located and if they do not damage the automobile, to ascertain the correct vehicle identification number. United States v. Johnson, 5 Cir. 1970, 431 F.2d 441 (en banc). The rationale for that holding is "that an automobile owner can have no reasonable expectation of privacy with respect to the car's [vehicle identification number]." United States v. Polk, 5 Cir. 1970, 433 F.2d 644. Thus the district court correctly refused to suppress testimony concerning the Mustang's vehicle identification number. *See* United States v. Lipscomb, 5 Cir. 1970, 435 F.2d 795; United States v. Hopkins, 5 Cir. 1970, 433 F.2d 1041; United States v. Williams, 5 Cir. 1970, 434 F.2d 681.

### IV.

■ Lowery argues that the Government failed to prove beyond a reasonable doubt an essential element of its case—namely, that Lowery knew that the Mustang had been stolen. It is true that there is no direct evidence in the record suggesting that Lowery knew that the Mustang had been stolen. Instead, the Government relied on circumstantial evidence and the familiar proposition that the unexplained possession of recently stolen property is a circumstance from which the jury may reasonably infer that the person in possession knew that the property had been stolen. *See, e.g.,* Hale v. United States, 5 Cir. 1969, 410 F.2d 147, 150; Overton v. United States, 5 Cir. 1968, 405 F.2d 168, 169. To invoke the presumption of knowledge, the Government offered the testimony of Mrs. Christy Heyward Waddell to prove that the Mustang was stolen in California on April 9, 1969, and the testimony of Charles David Frith that Lowery was in Mississippi with a similar Mustang in the latter part of April 1969. F.B.I. Agent Johnson testified that the vehicle identification number of the Mustang that Lowery had left at Frith's garage in Morton matched the number of the automobile that Mrs. Waddell testified had been stolen from her.

Lowery, of course, attempted to explain his possession of the stolen automobile and thus rebut the presumption. He testified that he obtained the use of the Mustang from a friend in Long Beach, California, by paying him $50. His testimony was vague and occasionally self-contradictory as to whether he had borrowed, rented, or purchased the automobile. In any event, the adequacy and truthfulness of an accused's explanation was a question for the jury. Beufve v. United States, 5 Cir. 1967, 374 F.2d 123, 125; Broom v. United States, 5 Cir. 1965, 342 F.2d 419. The jury was warranted in disbelieving Lowery's explanation of his possession.

Considering the evidence presented in the light most favorable to the Government, we hold that substantial evidence exists to support the jury's verdict.

### V.

■ Finally, Lowery argues that the district court's instruction to the jury [3] that it was permitted to infer Lowery's knowledge that the automobile had been stolen from the fact of his possession of the recently stolen automobile was unconstitutional under Leary v. United States, 1969, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57. We have recently considered the precise question in United States v. Polk, 5 Cir. 1970, 433 F.2d 644. In that case we held that a similar jury

---

3. The district court instructed the jury as follows:

> Possession of property recently stolen is a circumstance from which the jury may reasonably draw the inference and find that the person in possession knew the property had been stolen. The same inference may be reasonably drawn from a false explanation of such possession. Possession in one state of property recently stolen in another state is a circumstance from which the jury might reasonably infer and find in the light of the surrounding circumstances that the person in possession not only knew it to stolen property but also transported or caused it to be transported in interstate commerce.

charge[4] met the standard set out in *Leary* for determining the constitutionality of a presumption. We see no reason to depart from that holding in this case.

Therefore, the judgment of the district court is

Affirmed.

4. The district court in the *Polk* case charged the jury as follows:

> Any possession of property recently stolen, if not satisfactorily explained, is also ordinarily a circumstance from which the jury may reasonably draw the inference and find in the light of surrounding circumstances shown by the evidence in the case that the person in possession not only knew it was stolen property but also participated in some way in the theft of the property. *See* United States v. Polk, 5 Cir. 1970, 433 F.2d 644, 648.