Ronald Stephen WOOD, Appellant,

v.

The STATE of Texas, Appellee.

No. 67486.

Court of Criminal Appeals of Texas, Panel No. 1.

March 3, 1982.

Jerry D. Patchen, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Molly Naylor and Paul Mewis, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, DALLY and TEAGUE, JJ.

## OPINION

TEAGUE, Judge.

This is an appeal where appellant was convicted in the trial court of two counts of an indictment which charged him with receiving two separate items of stolen property. After conducting a pre-trial hearing on appellant's motion to suppress evidence, which the trial court denied, and pursuant to a plea bargain agreement between appellant and the prosecuting attorney, and after appellant entered pleas of guilty,[1] the trial court assessed appellant's punishment at 10 years in the penitentiary on each count, with the sentences to run concurrently. Appellant was sentenced, after waiving the time for filing of a motion for new trial, and gave notice of appeal on the same day.

---

1. The record reflects the following:

THE COURT: As to each count of the indictment, how do you plead? Guilty or not guilty?

THE DEFENDANT: Guilty.
THE COURT: Now is your plea in each count of the indictment voluntary?
THE DEFENDANT: Yes sir.

■ Appellant's first ground of error posits that the trial court erred in denying his pre-trial motion to quash the indictment.[2] The appellant's motion to quash asserted that the indictment inadequately described the corporeal personal property that was alleged to have been stolen. Appellant contends that such descriptive terms as "One truck tractor," (Count One), and "One automobile," (Count Two), do not comply with Art. 21.09, V.A.C.C.P., which provides:

> If known, personal property alleged in an indictment shall be identified by name, kind, number, and ownership. When such is unknown, that fact shall be stated, and a general classification, describing and identifying the property as near as may be, shall suffice. If the property be real estate, its general locality in the county, and the name of the owner, occupant or claimant thereof, shall be a sufficient description of the same.

We find that *Gaines v. State*, 501 S.W.2d 315 (Tex.Cr.App.1973), is dispositive of appellant's complaint as to Count Two of the indictment. There, this Court held that even in the face of a motion to quash, the descriptive averment of "one automobile of the value of over $50.00" was sufficient to apprise that defendant of the nature of the charge against him. See also *Ward v. State*, 446 S.W.2d 304 (Tex.Cr.App.1969); *Davis v. State*, 130 Tex.Cr.R. 252, 93 S.W.2d 729 (1936); *Snyder v. State*, 118 Tex.Cr.R. 652, 39 S.W.2d 885 (1931).

As to appellant's complaints regarding the descriptive averment of "One truck tractor," (Count One), our research has not at this time revealed a "white horse case." However, a review of the cases, in conjunction with a personal property descriptive averment which is generic, reveals that a descriptive averment of personal property is adequate if it alleges (1) quantity; (2) the general type of property, as long as it is more specific than merely stating "property" or "merchandise;" (3) "ownership" of the property; and (4) if necessary, the jurisdictional value of the property. See also, *Thomas v. State*, 621 S.W.2d 158 (Tex.Cr. App.1981), regarding the discussion therein of the terms "effective consent" and "owner."

We first review the cases concerning property descriptions, characterizing the sufficiency or insufficiency of the alleged description of the property by the following titles:

### PROPERTY DESCRIPTION HELD SUFFICIENT NOTWITHSTANDING A MOTION TO QUASH WAS FILED

See, "merchandise, exact name, number, and kind unknown," *Gentry v. State*, 608 S.W.2d 643 (Tex.Cr.App.1980); "seven rifles," *Welch v. State*, 543 S.W.2d 378 (Tex. Cr.App.1976); "two suits," *Bruner v. State*, 509 S.W.2d 620 (Tex.Cr.App.1974); "One oxygen container and the contents thereof, to wit: oxygen," *Kirkland v. State*, 489 S.W.2d 298 (Tex.Cr.App.1972); "one televi-

---

2. Although we will discuss appellant's contentions regarding his motion to quash the two count indictment we do observe that the issue may not properly be before this Court, as the record reflects the following, which occurred prior to appellant entering his pleas of guilty:

> THE COURT: Now as I understand it, you and your counsel and counsel for the State desire to have this matter heard before the Court without a jury. Is this correct?
> THE DEFENDANT: Yes sir.
> THE COURT: Although heretofore you have filed some papers, one of which indicates that you want a jury to assess the punishment if you are convicted. That was filed when you anticipated a jury trial. All these other motions and the motions to suppress, it has been agreed—I don't believe it's been

agreed but tacitly agreed both motions will hang on the validity of the search and the validity of the Court's ruling with regard to the motions to suppress.
> MR. PATCHEN (the defense attorney): That's correct, Your Honor.
> THE COURT: In order to have the record correct, limited to the matter of the question of validity. *I take it you are willing to withdraw further consideration in the case of all motions heretofore filed and heard or not heard except the motions to suppress, is that correct?*
> MR. PATCHEN: That is correct, Your Honor.
> THE COURT: *Then all other motions are withdrawn.* Now let me have those papers. (Emphasis added.)

sion set," *Mays v. State*, 428 S.W.2d 325 (Tex.Cr.App.1968); "one tire" and "one wheel," *Hendley v. State*, 313 S.W.2d 296 (Tex.Cr.App.1958); "one automobile tire," *Young v. State*, 139 Tex.Cr.R. 509, 141 S.W.2d 315 (1940); "pistol," *Smith v. State*, 131 Tex.Cr.R. 322, 98 S.W.2d 806 (1936); "one head of cattle," *Stubblefield v. State*, 131 Tex.Cr.R. 67, 95 S.W.2d 418 (1936); "one bale of seed cotton," *Bell v. State*, 84 Tex.Cr.R. 160, 205 S.W. 986 (1918); *Tolbert v. State*, 84 Tex.Cr.R. 159, 205 S.W. 987 (1918); "one suit of clothes," *Baldwin v. State*, 76 Tex.Cr.R. 499, 175 S.W. 701 (1915); "one lubricator, two oil cups, (etc.)," *Schenk v. State*, 76 Tex.Cr.R. 564, 174 S.W. 357 (1915); "$4 in money, 2 knives, & one ring," *Campbell v. State*, 61 Tex.Cr.R. 504, 135 S.W. 548 (1911); "one watch & one pocket knife," *Grissom v. State*, 40 Tex.Cr.R. 146, 49 S.W. 93 (1899); "on (sic) horse," *Barner v. State*, 20 S.W. 559 (Tex.Cr.App.1892); "one five dollar bill in money," *Green v. State*, 28 Tex.App. 493, 13 S.W. 784 (1890); and "money," *Ellingsworth v. State*, 487 S.W.2d 108 (Tex.Cr.App.1972); *Byrd v. State*, 456 S.W.2d 931 (Tex.Cr.App.1970).

### PROPERTY DESCRIPTION HELD SUFFICIENT—NO MOTION TO QUASH WAS FILED

See, "one ring," *Cox v. State*, 560 S.W.2d 675 (Tex.Cr.App.1978); "one pick-up truck," *White v. State*, 505 S.W.2d 258 (Tex.Cr.App. 1974); "One purse," *Ashford v. State*, 502 S.W.2d 27 (Tex.Cr.App.1973); "one automobile," *Ward v. State*, 446 S.W.2d 304 (Tex. Cr.App.1969); "ten drill bits," *Wilson v. State*, 398 S.W.2d 291 (Tex.Cr.App.1965); "one hundred twenty-five pounds of grain," *Guidry v. State*, 172 Tex.Cr.R. 516, 360 S.W.2d 152 (1962); "one camera," *Beland v. State*, 160 Tex.Cr.R. 351, 271 S.W.2d 430 (1954); "an automobile," *Hicks v. State*, 128 Tex.Cr.R. 595, 83 S.W.2d 349 (1935); "one four-wheel trailer and about 1300 pounds of seed cotton," *Houston v. State*, 98 Tex.Cr.R. 280, 265 S.W. 585 (1924); "four cases of oil clothing, six cases of tobacco, (etc.)," *Modica v. State*, 94 Tex.Cr.R. 403, 251 S.W. 1049 (1923); "one watch, one pair of shoes, and one razor," *Johnson v. State*, 42 Tex.Cr.R.

103, 58 S.W. 69 (1900); "on (sic) cattle" (holding "cattle" alone would be sufficient), *Matthews v. State*, 39 Tex.Cr.R. 553, 47 S.W. 647 (1898); and "U. S. Currency," *Roberts v. State*, 172 Tex.Cr.R. 500, 360 S.W.2d 883 (1961); [Not sufficient] "one dollar in Mexican money" (distinguishing U. S. versus foreign money), *Wade v. State*, 35 Tex.Cr.R. 170, 32 S.W. 772 (1895).

### PROPERTY DESCRIPTION HELD INSUFFICIENT AND SUBJECT TO MOTION TO QUASH

See, "barbed wire," *Moore v. State*, 532 S.W.2d 333 (Tex.Cr.App.1976); "tires," *Moore v. State*, 473 S.W.2d 523 (Tex.Cr. App.1971); "personal property," *Howk v. State*, 138 Tex.Cr. 275, 135 S.W.2d 719 (1940); "furniture and equipment," *Luce v. State*, 88 Tex.Cr.R. 46, 224 S.W. 1095 (1920); *Rodgers v. State*, 448 S.W.2d 465 (Tex.Cr. App.1969); "wall paneling" *Rhodes v. State*, 560 S.W.2d 665 (Tex.Cr.App.1978).

### PROPERTY DESCRIPTION HELD IN-SUFFICIENT—NO MOTION TO QUASH WAS FILED (FUNDAMEN-TAL ERROR)

See, "property," *Harris v. State*, 587 S.W.2d 429 (Tex.Cr.App.1979); "merchandise," *Richard v. State*, 563 S.W.2d 626 (Tex.Cr.App.1978) and *Willis v. State*, 544 S.W.2d 150 (Tex.Cr.App.1976); "corporeal personal property," *Mankin v. State*, 451 S.W.2d 236 (Tex.Cr.App.1970); "seed," *Oakley v. State*, 167 Tex.Cr.R. 630, 323 S.W.2d 43 (1959); "oil field equipment," *Leos v. State*, 155 Tex.Cr.R. 478, 236 S.W.2d 817 (1951); "certain lubricating oil," *Scott v. State*, 125 Tex.Cr.R. 396, 67 S.W.2d 1040 (1934).

After reading the above cases, we conclude that the descriptive averment, "one truck tractor," in conjunction with the allegations found in the indictment regarding ownership and jurisdictional value, is sufficient to describe the stolen property allegedly received by appellant, notwithstanding appellant's motion to quash the indictment.

We further observe that though Count One of the indictment merely alleged "one truck tractor" and Count Two merely alleged "one automobile" appellant acknowledged in his pleading, entitled "Supplemental Motion to Suppress Search of Residence," that the "truck tractor" was of the *International* kind, "International tractor trailor," and that the "automobile" was a "1978 Oldsmobile."

In appellant's "Stipulation of Evidence," we also find the following:

> I stipulate that the references to the "brown car" or "brown oldsmobile" are the same car owned by Vallie Haywood, and the references to "Tractor-trailor rig" is the same rig owned by John Washington.

Although the record does not reflect whether or not appellant or his counsel was given the opportunity to see the offense report prior to the filing of his motion to quash, we do observe that it was admitted in evidence during the plea proceedings. The offense report reflects in part the following:

> The second vehicle was a 1977 International Truck-Tractor, VIN E2327GGA24990, reported stolen to HPD on 5–31–79, case # P38619, identified from seconday (sic) information.
> The third vehicle was a 1978 Oldsmobile, VIN 3R47F8R401558, reported stolen to HPD on 5–8–79, case # P18417. This vehicle was registered to the suspect using a salvage title and displayed a VIN plate which appeared to be a factory issue. The engine number and transmission number had both been removed, consequently, the vehicle was seized. The MVI certificate bore the correct VIN.

In light of this record, we cannot find any merit to appellant's main argument, as set out in his motion to quash, that "the Defendant does not have proper notice with which to prepare his defense." We find that both prior to and during trial he had more than sufficient notice with which to prepare his defense, if he had one. In fact, prior to entering his pleas, the record reflects the following:

[THE COURT]: ... Now you have read the indictment, have you not?

THE DEFENDANT: Yes sir.

THE COURT: Are you satisfied you understand the substance of the indictment and what you are charged with in counts one and two of the indictment?

THE DEFENDANT: Yes sir.

Also, while on the appellant's premises, the officers encountered appellant's father, who told the officers: "Ronnie [appellant] had been driving the van and the truck had been parked there for about a week ..." The officers also encountered appellant's aunt and uncle, who informed the officers: "Ronnie had been driving the Ford van and the Oldsmobile for quite awhile ..."

Finding that the indictment sufficiently gave the appellant notice of what he was charged, appellant's first ground of error is overruled.[3]

In his second ground of error appellant complains of (1) the warrantless searches of the two stolen vehicles for which he has been convicted of receiving and (2) the failure of the trial court to suppress vehicle inspection numbers (VIN's) obtained as a result of the searches.

■ We first find that the appellant has successfully cleared the procedural hurdles outlined in *Galitz v. State*, 617 S.W.2d 949 (Tex.Cr.App.1981), to raise these contentions on appeal. A plea bargain agreement was entered into with the State, agreed to personally in court by the appellant, and was followed by the trial court. Further, appellant only stipulated to what the witnesses against him would have said, and the stipulation does not contain a judicial confession to the offenses charged. Cf., *Brewster v. State*, 606 S.W.2d 325 (Tex.Cr.App. 1980); *Ferguson v. State*, 571 S.W.2d 908

---

**3.** Appellant neither argues nor complains on appeal that the indictment was void; merely that he had insufficient notice of the charges contained in the indictment. For recent discus-sion on the *jurisdictional aspects* of an indictment, see *Ex parte Kirby*, 626 S.W.2d 533 (1981).

(Tex.Cr.App.1979); also see, *Dinnery v. State*, 592 S.W.2d 343 (Tex.Cr.App.1980). Finally, the motion to suppress was in writing and filed pre-trial. Appellant's claim is properly before this Court for its consideration. We, therefore, will discuss his contentions.

In resolving appellant's contentions, we acknowledge that we have been confronted in this cause with what might be denominated unique facts and circumstances, which facts and circumstances actually cause us to disagree with the appellant's premise and thesis, to-wit:

> This case exudes with the titan ramifications incurred in the warrantless search and seizure of items from within the sanctity of the home. In the face of the manifold classic decisions to the contrary, the prosecution has attempted to deprecate the seriousness and significance of the warrantless invasion of appellant's abode. The multitude of grave legal errors committed in such a process, however, negate the conviction obtained and necessitate reversal.

The facts show the following:

At the hearing conducted on appellant's pre-trial motion to suppress, Robert E. Petty, a Texas Department of Public Safety "Agent Investigator for Criminal Intelligence Service," testified that he and another such agent, Lee Pagel, while in an unmarked motor vehicle, were driving by appellant's residence on unrelated business when they noticed a truck tractor and semi-trailer, which had a late model Ford van vehicle situated on the trailer, parked partially on the roadway of a street. This location of the truck tractor and trailer was probably in violation of State law. See Art. XII, Art. 6701d, V.A.C.S. Petty and Pagel also noticed that the van had a vent window broken out, but they also saw that a piece of cardboard had been taped across the window. The van did not have a front license plate. See Art. 6675a–3e, V.A.C.S. Although Petty and Pagel were in the neighborhood on an unrelated matter, they decided to place the van and truck under surveillance because of the condition of the vent window and the absence of a front license plate on the van. This made them suspicious that the van had been stolen. They also ran a radio license plate check on the license plates of both vehicles, in order to ascertain the true registration of the vehicles. The license plate check revealed that the plates on the van and the truck tractor had been issued for vehicles other than the ones to which they were attached.

A. (By Petty): Yes sir. The license plate on the truck tractor came back as being issued to a 1974 Chevrolet truck tractor. However, this vehicle we were looking at was a 1977 International and the license number on the van, the Ford van, came back to a 1972 Pontiac hardtop.

After maintaining surveillance of the vehicles for approximately 30 minutes, Petty and Pagel then saw a Harris County Sheriff's vehicle, later shown to be driven by Deputy Sheriff Allright, which they flagged down to stop. They learned that Allright was in the process of investigating a reported burglary. At their request, Allright went to a trailer house [4] located across the street from where Petty and Pagel were situated to learn who occupied the premises where the truck tractor trailer was parked. After Allright went to the trailer house he learned from its occupant that the owner of the trailer house in which Petty and Pagel were interested was currently out of town. However, Allright also learned that two Mexican non-English speaking males, later shown to be Benancio Garcia Martines and Constance Garcia, were reported to be liv-

---

4. A. (By Petty): We had sat there approximately thirty or thirty-five minutes when a Sheriff's officer drove past our location and we flagged him down and identified ourselves to him and he identified himself as Deputy Allright with the Sheriff's Office and he said he was making a burglary call at a residence which was directly across the street from where the vehicles were parked, and we asked him to attempt, while he was in the process of making the burglary investigation, to see if he could find out who owned the vehicles and who was driving the vehicles and see what information he could determine.

ing in the trailer house. Allright was also told by the occupant that appellant "had the vehicles and had brought the vehicles to that location." Allright conveyed all this information to Petty and Pagel.

Petty and Pagel then summoned two Spanish-speaking Department of Public Safety troopers, later shown to be Andrew Samaira and Jesus Segura, to come to the scene and act as interpreters for them. After Samaira and Segura arrived at the scene, they, Petty, and Pagel then went to the trailer house where Martines and Garcia were located. After encountering Martines and Garcia, the four Department of Public Safety officers learned that Martines and Garcia had been working for appellant at a nearby automobile wrecking yard, and that appellant had been driving them back and forth to the wrecking yard in the Ford van. Martines and Garcia also indicated to the officers that appellant was due to return to his residence in about two days. After being asked, Martines and Garcia told the officers that they personally had no objection to the officers' searching any of the vehicles located on the property where appellant's trailer house, in which Garcia and Martines were residing, was located.[5]

5. The record reflects the following:

Q: [By Mr. Mewis, the prosecutor]: Did the two Mexican males know you were looking inside this Buick?
A: [By Petty, the witness]: Yes sir. Oldsmobile. We asked if it was all right if we checked the vehicles and have their permission and they said Ronnie left them to take care of the property while he was gone and we had his permission to come on the property and check the vehicles.

&ast; &ast; &ast; &ast; &ast; &ast;

Q: [By Mr. Patchen, appellant's attorney]: They didn't indicate to you they had consent and permission to operate that equipment, did they?
A: [By Petty]: No. All they stated was Ronnie left them in charge of the house and they were taking care of the property and so on while he was gone.

&ast; &ast; &ast; &ast; &ast; &ast;

Q: [By Mr. Patchen]: So you don't know whether they were actually left in charge of the automobile or the truck tractor at all?
A: [By Segura, the witness]: They said they were left in charge of the property.
Q: Did you ask them what property?
A: I asked them why they were staying there.
Q: What did they inform you?
A: They were staying there at the trailer house in charge of the property in the yard plus the eighteen-wheeler outside.
Q: How were they in charge of it?
A: Taking care of it.

&ast; &ast; &ast; &ast; &ast; &ast;

Q: And you can't tell us whether or not they had consent to authorize you to enter the Cutlass automobile, can you?
A: All I know they·said they were left in charge. When we asked to see the Cutlass, they said yes, so.

&ast; &ast; &ast; &ast; &ast; &ast;

Q: Give me the English interpretation of what your question was?

A: I asked them if the car was theirs and they said no, it belonged to Mr. Wood, and I said well, would you mind if we took a look at it, and we are interested in some of the tags on it, and they said no, go right ahead and look at it.
Q: They didn't care one way or the other?
A: I guess not.
Q: Did you ask them if Mr. Wood gave them the authority to give their permission?
A: They said they were left in charge of the property and the Cutlass was part of the property.
Q: What were they to do with the property? Did they explain that to you?
A: Just guard it, I guess, to make sure no one steals it.
Q: To make sure no one messed with it?
A: I don't know.
Q: What about the tractor? Did you ask their permission to inspect the tractor?
A: I asked if they knew how to operate the tractor and they said no, Mr. Wood was the only one and he was the owner of it and so that was it.
Q: So you never actually obtained their consent to move the tractor?
A: Not to move it. I asked them if we could look at it concerning about the eighteen-wheeler and informed them that the tags on them were run and it did come back stolen and we wanted to look at it, and they said go ahead.

&ast; &ast; &ast; &ast; &ast; &ast;

Q: [By Mr. Patchen]: Did you ask him any further questions?
A: [By Samaria, the witness]: Yes. I asked him who the van belonged to also, and again he said it belonged to a Ronnie Wood, and I then asked him why was it on the back of the flatbed, and he said because neither one of them drove and that Mr. Wood was the only one that drove the van. He brought the van back along with the eighteen-wheeler from a job, and at this time he was asked—there was another vehicle parked inside the fenced area, and I asked who that vehicle belonged

These vehicles included an Oldsmobile sedan that was parked in appellant's driveway, and a Proler recreational vehicle that was parked on appellant's property but located on the opposite side of the appellant's trailer house.

After Pagel went to the Oldsmobile sedan, based on him seeing the vehicle inspection number located on the dash, he suspicioned, which was probably nothing more than a "gut-feeling," that something was not in order. Pagel wrote down the vehicle inspection number and then opened an unlocked door to the Oldsmobile in order to examine the identification plate, which should have been attached to the door post of the automobile. After opening the door, Pagel then observed that the vehicle identification plate was missing. Pagel also observed that the vehicle inspection sticker located on the front window of the Oldsmobile had a different number from the one on the dash. Pagel then ordered a radio registration check to be made of the Oldsmobile's inspection number that he had obtained. In short order, he received information over the radio that the number on the dash of the Oldsmobile was registered in appellant's name, but the number on the inspection sticker reflected that it was issued for a vehicle that had previously been reported stolen.

Subsequently, Roy Newman, who had been assigned to the automobile theft division of the Department of Public Safety, arrived at the scene and checked the truck tractor, the Ford van, and the Oldsmobile for confidential vehicle inspection numbers. Newman was able to determine, after he checked with the Texas Crime Information Center, that the vehicle inspection numbers for both the van and truck tractor were for vehicles previously reported stolen, and that the confidential vehicle inspection number on the Oldsmobile had been obliterated. In order to check the vehicle inspection numbers on the Oldsmobile, which are located under the hood, it was necessary for Newman to enter the car in order to pull the hood latch.

Appellant claims that the warrantless searches of the various vehicles for vehicle identification numbers were unreasonable searches and seizures, contending that no exigent circumstances existed, no warrant was obtained, and the "consent" by the Mexican males living in appellant's trailer house was without appellant's authority. We overrule appellant's contentions.

In light of our holding in this case, the consent issue will not be addressed.[6]

█ We find persuasive, and therefore adopt, and apply the reasoning and holdings of a long line of Fifth Circuit Court of Appeals' decisions that the inspections of motor vehicles performed by the police officers, who are entitled to be on the property where the vehicles were located, which in no way damaged the vehicles and were limited to determining the correct identification numbers thereof, were not searches within the meaning of the Fourth Amendment; and that, alternatively, if the inspections constituted a Fourth Amendment search, then no search warrant was necessary because the inspections were reasonable and did not violate the right of the appellant to be secure in his person, house, papers, or effects. *United States v. Johnson*, 431 F.2d 441, (5th Cir. 1970), aff'g, 413 F.2d 1396 (5th Cir. 1969). Also see, *United States v. Forrest*, 620 F.2d 446 (5th Cir. 1980); *United States v. Duckett*, 583 F.2d 1309 (5th Cir. 1978); *United States v. Sherriff*, 546 F.2d 604 (5th Cir. 1977); *United States v. Wood*, 500 F.2d 681 (5th Cir. 1974); *United States v. Faulkner*, 488 F.2d 328 (5th Cir. 1974); *United States v. Baker*, 452 F.2d 21 (5th Cir. 1971); *United States v. Pearson*, 448 F.2d 1207 (5th Cir. 1971); *United States v. Cross*, 437 F.2d 385 (5th Cir. 1971); *United States v. Hull*, 437 F.2d 1 (5th Cir. 1971); *United States v. Lowery*,

---

to and again he replied to Mr. Wood, and I asked him if he minded if we looked at it, and at this time he said no. He removed the keys from his pocket and unlocked the chain-link gate and we proceeded to check out the other vehicle.

   \*    \*    \*    \*    \*    \*

6.  See, however, footnote 5, *ante.*

436 F.2d 1171 (5th Cir. 1971); *United States v. Lipscomb*, 435 F.2d 795 (5th Cir. 1971); *United States v. Williams*, 434 F.2d 681 (5th Cir. 1970); *United States v. Hopkins*, 433 F.2d 1041 (5th Cir. 1970); *United States v. Polk*, 433 F.2d 644 (5th Cir. 1970); and *United States v. Jones*, 432 F.2d 773 (5th Cir. 1970).

In this cause, after the officers first noticed that the truck tractor was probably illegally parked, they then determined that the license plates on both vehicles, the truck tractor and the Ford van, had been issued to other vehicles. Therefore, probable cause existed to believe that the two vehicles were stolen. This probable cause authorized the officers to enter appellant's premises to make further investigation, by questioning people reportedly living there about the lawful status of the vehicles. Once on the premises, they noticed another vehicle, the Oldsmobile, which turned out to be a stolen vehicle. They were informed by the Mexican male tenants of the trailer house that all of the vehicles belonged to the same person—the appellant. Thus, the officers reasonably suspicioned that if two of appellant's vehicles were stolen, the third was also probably stolen. This reasonable suspicion entitled them to make minimal intrusion into other vehicles on the premises for purposes of inspecting them for identification numbers, see *United States v. Forrest*, supra, as long as no damage was done to the vehicles and no other search was conducted. The subsequent further intrusions into all of the vehicles, to search for confidential vehicle inspection numbers and other indicia of ownership, were permissible once probable cause to believe that each vehicle had been stolen was established. See, *United States v. Faulkner*, supra, and *United States v. Baker*, supra. Such probable cause in this case was established when it was determined by the officers that the license plates on the vehicles in front of the house were not attached to vehicles to which they had been assigned. Furthermore, when the vehicle inspection number on the vehicle inspection sticker of the Oldsmobile was shown to be for a stolen vehicle, and therefore inconsistent with oth-

er vehicle inspection numbers on that vehicle, additional probable cause was shown. See *United States v. Williams*, supra; *United States v. Lowery*, supra.

For the foregoing reasons, we find that the searches of the vehicles for the limited purpose of discovering identification numbers and other indicia of ownership were reasonable under the circumstances, and the trial court properly denied the appellant's motion to suppress.

Ground of error number two is overruled.

We find that the judgment, as to count one of the indictment, reflects that the appellant was convicted of "theft of automobile." The record clearly reflects that appellant's conviction under this count was for "theft of one truck tractor." We therefore order the judgment of conviction, as to the first count, reformed to reflect that appellant has been convicted of "theft of one truck tractor," and not "theft of automobile."

As reformed, the judgments of conviction are affirmed.

DALLY, J., concurs in result.

ROBERTS, Judge, concurring.

I agree that the second ground of error should be overruled, but I think that adopting the Fifth Circuit's peculiar rule is unwise and unnecessary.

When an officer opens the door or the hood of a vehicle to find identifying numbers, he is searching. *See Maldonado v. State*, 528 S.W.2d 234, 241 (Tex.Cr.App. 1975). ("The scope of such a search might reasonably have been expected to include examination of all identification numbers ....") *See also Hudson v. State*, 588 S.W.2d 348, 352 (Tex.Cr.App.1979) (opening the door to photograph interior was a search). The Fourth Amendment protects the right of the people to be secure in their effects—including automobiles—against unreasonable searches. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). The Fifth Circuit's holding that these "inspections" are not

searches (or, alternatively, that they are searches which are always reasonable) is unsound. W. LaFave, 1 *Search & Seizure* 359–361 (1978). If the court adheres to this rule, the people of Texas will have no constitutionally protected right of privacy in their vehicles; officers will be able to open them for no reason at all, and this court will hold that they were not searched. It is an unsound doctrine, and one that is strange for coming so soon after the holding that "the expression, 'inventory search,' is not a talisman in whose presence the Fourth Amendment ... fades away and disappears." *Gill v. State*, 625 S.W.2d 307, 318–319 (Tex.Cr.App.1981) (Teague, J.). Evidently, the expression, "VIN inspection," is such a talisman.

The rule is doubly strange in this case, for it is a dictum which is unnecessary to the result. The search can be upheld in three other ways that comport with Fourth Amendment doctrine, and Judge Teague's opinion says as much.

One way would be to hold that the officers had probable cause to search the vehicles and that exigencies excused them from the warrant requirement. Without opening doors or hood, the officers knew that two vehicles bore license plates that were not issued to them, that one of them had a broken vent window, that the Oldsmobile's inspection sticker bore a different VIN than the one visible on the dash, and that the vehicles reportedly belonged to a person who operated a nearby wrecking yard. This would have given them probable cause to believe that the vehicles were stolen, and the mobility of the vehicles would have excused them from the warrant requirement.

A second justification for the searches would be to hold that the officers' observations gave them less than probable cause, but a basis for suspicion that made it objectively reasonable (under the *Terry*[*] standard) to have searched for the VIN. W. LaFave, 1 *Search & Seizure* 361 (1978).

A third justification for the searches might appear if the court were to examine

whether Martines and Garcia could, and did, consent to the searches. This might be a close and difficult question, but it would be better to take up such a question than to expediently abolish every Texan's right to be protected from unreasonable searches of his vehicle.

---

[*] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).