**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Glen FAULKNER and Linda Forrest Davis Jurek, Defendants-Appellants.**

**No. 73–2299.**

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1974.

Rehearing and Rehearing En Banc Denied Feb. 19, 1974.

David L. Wagner, Abilene, Tex. (Court-appointed), for James Glen Faulkner.

Marvin O. Teague, Houston, Tex., for Linda Jurek.

Frank McCown, U. S. Atty., W. E. Smith, Asst. U. S. Atty., (Fort Worth, Tex.), for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellants Faulkner and Jurek were convicted of knowingly concealing and possessing counterfeit in violation of 18 U.S.C.A. § 472. In this appeal, both appellants contend that the counterfeit itself should not have been admitted in evidence against them since it was uncovered in an unconstitutional search of their car. Additionally, appellant Jurek contends that one of the jury instructions improperly shifted the burden of proof to the defendants. We affirm both convictions.

At approximately 8:40 p. m., Friday, May 9, 1973, Highway Patrolmen John Ferguson and Kenneth Maxwell were operating a radar unit on Interstate Highway 20 about four or five miles west of Big Spring, Texas, when they noticed a car approaching that did not appear to have a front license plate. As the vehicle passed they noted the rear Texas plate hanging at an angle, apparently secured by only one bolt, and the officers decided to investigate.

By the time the officers had caught up with the car, it was stopped in a parking lot. The officers questioned Faulkner about the missing license plate and the ownership of the vehicle. Faulkner explained that his brother-in-law owned the car but that he did not know his name. Jurek claimed that the car belonged to her husband and that she and Faulkner were only friends, contradicting Faulkner's claim that she was his wife. Suspecting that the car might be stolen, the officers attempted to check its vehicle identification number but discovered that it had been removed, as is common on stolen vehicle. Mrs. Jurek gave the officers the license and registration papers to the car but neither the defendants' names nor the names of anyone they claimed to know appeared on the papers.

Believing the vehicle to be stolen, Officer Ferguson began a search of it for other identification that might prove its ownership. In his search of the glove compartment he discovered a wallet containing personalized checks with the inscription James Faulkner and a large quantity of money, all in twenty dollar bills. Officer Ferguson took the wallet

to the patrol car in order to inspect it in the presence of Faulkner. When the officers removed the bills they noted that the first five or six had the same serial number. A further search of the car uncovered more counterfeit twenty dollar bills.

Appellants' primary complaint is that their arrest for a minor traffic violation —driving without a front license plate —provided no justification for a search of the car. They rely primarily upon Amador-Gonzalez v. United States, 5 Cir. 1968, 391 F.2d 308, where we held unconstitutional a search of defendant's car for narcotics after he had been stopped for an improper turn. In that case, however, the stop was made by a narcotics agent who already suspected the defendant of possessing narcotics and used the traffic violation as a mere pretext to search for them.

■ The arrest in the present case was no mere pretext for the search. The officers in the investigation of the crime of driving without a front license plate certainly had the right to ask for Faulkner's driver's license and to make reasonable investigative inquiry about the ownership of the vehicle. United States v. Cross, 5 Cir. 1971, 437 F.2d 385; Myricks v. United States, 5 Cir. 1967, 370 F.2d 901, cert. dismissed, 386 U.S. 1015, 87 S.Ct. 1366, 18 L.Ed.2d 474. When Faulkner and Jurek gave the officers conflicting stories about their relationship and the ownership of the car, the suspicion that the car might have been stolen was reasonably aroused. Under these circumstances, the officers acted reasonably in looking for the vehicle identification number. United States v. Johnson, 5 Cir. 1970, 431 F.2d 441. When they discovered that it had been removed, and when they saw that the names on the license and registration papers of the car were not those of either of the defendants nor of anyone they claimed to know, we think there was probable cause to suspect that the car had been stolen. Under these circumstances we hold, as did the Seventh Circuit in United States v. Jackson, 7

Cir. 1970, 429 F.2d 1368, that a search of the automobile for the purpose of discovering further indicia of ownership was reasonable and permissible. Accord, Meade v. Cox, 4 Cir. 1971, 438 F. 2d 323, cert. denied, 404 U.S. 910, 92 S. Ct. 234, 30 L.Ed.2d 182; Kendrick v. Nelson, 9 Cir. 1971, 448 F.2d 25. There was the necessary nexus between the reason for the arrest and the search to support a warrantless search of the automobile under Williams v. United States, 5 Cir. 1969, 412 F.2d 729. See also United States v. Kelehar, 5 Cir. 1972, 470 F.2d 176; Wellman v. United States, 5 Cir. 1969, 414 F.2d 263; Welch v. United States, 10 Cir. 1966, 361 F.2d 214, cert. denied, 385 U.S. 876, 87 S.Ct. 153, 17 L.Ed.2d 103; United States v. Owens, 7 Cir. 1965, 346 F.2d 329, cert. denied, 382 U.S. 878, 86 S.Ct. 163, 15 L. Ed.2d 119. Since the search was proper, the counterfeit was admissible. See Wellman v. United States, supra.

■ Appellant Jurek's second point is that the jury charge improperly shifted the burden of proof to the defendants. She asserts that the district court implied that, since the indictment had been returned by the grand jury, the defendants were obliged to come forward with evidence to overcome it. She quotes the following small excerpt from the charge as support for this:

> The grand jury merely determines whether there is probable cause to pass the case on to the Court, and to let a jury hear both sides under our adversary system where the parties are represented by lawyers, and where both parties have the right to bring in witnesses and to cross examine witnesses for the other side.

We find this argument without merit. When seen in full context, it is clear that the charge properly placed the burden of proof on the government. The full charge regarding the burden of proof is as follows:

> Before going into the particular principles of law relating to this kind of offense, I want to discuss with you

some fundamental principles that apply to every criminal case and that enure to the benefit of every defendant in a criminal case.

In the first place, the indictment itself is not any evidence whatever of guilt. It is merely a means of method of getting a case into court and of informing the defendant of the nature òf the charge against him. You can see the reason for a law like that. When a grand jury considers a case, the defendant is seldom there. In most cases, he is not there at all. He certainly would not have any lawyer there, and there is no cross examination of other witnesses or anything like that. The grand jury merely determines whether there is probable cause to pass the case on to the Court, and to let a jury hear both sides under our adversary system where the parties are represented by lawyers, and where both parties have the right to bring in witnesses and to cross examine witnesses for the other side. So, it is just common sense that a grand jury indictment is not any circumstance or evidence of guilt whatever.

In the second place, every person who comes into court charged with crime is presumed to be innocent of the offense lodged against him; and that presumption stays with him throughout the trial of the case and into your deliberations and remains, unless and until you are convinced that his guilt has been proved beyond a reasonable doubt. When I say "his", I use it in the legal sense, which includes "her". It includes both the masculine and the feminine.

In the next place, the burden of proof is always upon the government to establish the guilt of the defendant beyond a reasonable doubt. That means that the government must prove each and every element of the offense charged beyond a reasonable doubt. [If] it has failed to prove one or more of those elements beyond a reasonable doubt, then the defendant is entitled to an acquittal.

"Reasonable doubt" is not a fanciful or an imaginary doubt. The law of reasonable doubt does not require that the prosecution bring in a moving picture of the offense showing to a moral certainty that the defendant on trial is guilty. Reasonable doubt merely means a doubt based on a reason: the kind of common sense doubt based on a reason that would make an ordinarily prudent person hesitate to act in the more important affairs of his life.

Of course, as you go along now and in regard to the charge I have already given and the rest of it, you will take the charge as a whole and not single out any portion and consider it out of context.

Since we find no error in the proceedings before the district court, the judgment is

Affirmed.