**Eugene H. PINKNEY, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 8752.

District of Columbia Court of Appeals.

Argued June 12, 1975.

Decided July 16, 1976.

William T. Torgerson, Washington, D.C., appointed by this court, for appellant. William T. Plumb, Jr., Washington, D.C. also entered an appearance for appellant.

Henry H. Kennedy, Jr., Asst. U.S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and John L. Kern, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before FICKLING, KERN and NEBEKER, Associate Judges.

KERN, Associate Judge:

Appellant was convicted after a nonjury trial of carrying a pistol without a license. He challenges his conviction on the ground that the court erred in refusing to suppress the pistol the prosecution introduced against him at trial. The police had seized the pistol, immediately after arresting appellant pursuant to a warrant, from the auto he had been driving at the time of arrest.

The record reflects that a trio of police officers were on duty in the early morning hours of February 23, 1974, seeking to locate various persons for whom they had bench warrants. One such person was appellant, who had been the subject of an investigation for some time and had been indicted the day before by a United States Grand Jury for allegedly selling heroin to an undercover police officer. The officers, who were in a police cruiser, had a photograph of appellant and information that he "could be carrying a gun." [1] When they saw him driving by alone, they followed him and blocked him with their cruiser as he pulled over to the curb, as if either to park or make a U-turn.

---

1. One of the officers testified at the suppression hearing before trial that "a month or two . . . before . . . [the arrest] . . . a reliable source of information . . . stated to me that the individual known to him as Pee Wee, which was known to me as Mr. Eugene Howard Pinkney, does carry a revolver."

The officers alighted from their vehicle and, "because of the information we had that the gentleman we were to arrest could be carrying a weapon," deployed themselves as follows: Sergeant Blackburn, who was armed with a shotgun, positioned himself behind the police car with Officer Norris, and Officer Visley confronted appellant, still behind the wheel of his car, and asked for identification. At the very time the arrest was being effected, a man later identified as Mr. Akers stepped from the curb and approached appellant's car while talking to appellant. In the words of the third officer on the scene, Officer Norris, Akers was "coming up there moving fast" and Norris, "wanting to make sure the man didn't have any weapons on him," frisked him.[2]

Officer Norris further related that "[t]he conversation between him [Akers] and Mr. Pinkney [appellant] was to the effect that Mr. Pinkney wanted him to take his car right away. . . . [W]hile this conversation was still going on, I walked around to the driver's side of the car. And before releasing the car to the other gentleman . . . I put my head inside the car and looked around for weap-

ons."[3] The officer saw a gun "stuck between the driver's seat and the console on the driver's side of the car."[4] He removed the gun but did not reach under the seats or into the glove compartment. At that point, "Officer Vislay [sic] was standing right next to the driver's side door, and the defendant was standing right next to the driver's side door. Mr. Akers was walking around in the back of the car, and Sergeant Blackburn was still behind the police cruiser, with the shotgun."

Appellant argues vigorously that the warrantless search of the auto he was driving when arrested[5] was invalid because it was not a protective search incident to arrest.[6] He points to the Supreme Court's mandate in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which limits the scope of the search of one arrested to (a) his person and (b) the area "from within which he might gain possession of a weapon." *Id.* at 763, 89 S.Ct. at 2040. He then argues that when Officer Norris looked into the car on the driver's side and saw the pistol, appellant was outside of the car confronted by two officers and one shotgun and hence unable to gain possession of the pistol from between the front seats.[7]

2. The officer during this process felt a hard object in Akers's coat pocket and removed it. Upon discovering it was a screwdriver he returned it to Akers.

3. The officer explained that he acted "in case it was a weapon there, to avoid possibly getting shot."

4. The console in a Chevrolet Vega is the "box where the gearshift is" and "sits between the seats."

5. The car was not owned by appellant but had been loaned to him by his girlfriend.

6. Appellant also asserts that there was no probable cause for the officers to believe the auto contained a weapon sufficient to justify a warrantless search under the authority of *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), given (1) the absence of evidence in the record of the reliability of the information given to the police concerning appellant's carrying a weapon,

and (2) the relatively long time (a month or two) between the receipt of that information and the arrest. We agree that the information available to the officers at the time of appellant's arrest did not rise to the level or probable cause to believe appellant had a gun.

7. Appellant asserts in his brief that he was handcuffed at the moment the officer searched the car and seized the weapon. However, there is nothing in the record of the suppression hearing indicating when appellant was handcuffed. Officer Norris testified at the hearing that at the time of the seizure appellant was "already under arrest," but "I believe he went in our cruiser to the precinct after I had recovered the gun." The record of the trial reflects only that appellant's handcuffing occurred at the same time as appellant gave his keys to Akers and Officer Norris searched the car prefatory to letting Akers enter it; the testimony does *not* show that appellant was already in handcuffs when Officer Norris searched the car.

As we read the record, appellant was standing "right next" to the door of the auto, Akers was walking around behind the car, and the pistol, with the butt up, was "tucked down between" the driver's seat and the console at the time Officer Norris put his head in the car and saw the gun. Under these particular circumstances, we conclude that the pistol was in an area *Chimel* permits to be searched because it was one from within which appellant, the arrestee here, or his friend, Akers, might have gained possession of a weapon. *See, e. g., United States v. Manarite,* 448 F.2d 583 (2d Cir.), *cert. denied,* 404 U.S. 947, 92 S.Ct. 281, 30 L.Ed.2d 264 (1971) (defendant arrested in his apartment which was searched; seizure of items "near which several unidentified persons were standing" upheld); *United States v. Berryhill,* 445 F.2d 1189 (9th Cir. 1971) (defendant driving car arrested and removed from car; search of passenger's handbag for weapons upheld). *See also United States v. Kaye,* 492 F.2d 744 (6th Cir. 1974); *United States v. Brown,* 432 F.2d 552 (5th Cir. 1970), *cert. denied,* 416 U.S. 942, 94 S.Ct. 1947, 40 L.Ed.2d 293 (1974).

Accordingly, the warrantless search was proper as incident to arrest and the conviction must be affirmed.

*So ordered.*

NEBEKER, Associate Judge (concurring):

I agree with the reasoning of Judge Kern's opinion. However, I do not find it necessary to reach a safety justification rationale since on the facts it is clear that the police had a superior right temporarily to relocate the vehicle, thereby having a right to enter it independent of any question of reasonableness in apprehending danger.

My inquiry begins and, for practical purposes, ends with the question whether police may take custody of a vehicle [1] when arresting its sole occupant in the early morning hours as he drives it on a public street. I conclude the police may do so. Appellant having been arrested and secured for transportation to the police station, "the officer would have been derelict in his duty if he had left the car unattended" on a public street "in the middle of the night." *Cotton v. United States,* 371 F.2d 385, 392 (9th Cir. 1967). Hence, at the time the officer placed his head and shoulders into the automobile, it was subject to the custody of the police to the extent that the officer could have lawfully entered it to drive it. Given that superior right, the police could have and necessarily and inevitably would have discovered the weapon. *Cf. Killough v. United States,* 119 U.S.App.D.C. 10, 15, 336 F.2d 929, 934 (1964) and *Wayne v. United States,* 115 U.S.App.D.C. 234, 238, 318 F.2d 205, 209 (1963) ("Inevitable Discovery" Exception to Exclusionary Rule).

The fact that the police decided to permit appellant's friend to take the vehicle does not dilute or dissipate the prior and superior right of the police to custody of the car to avoid leaving it on the street. Possessed, as the police were, of this right to enter the vehicle to relocate it, appellant cannot object to the lesser intrusion by the officer merely putting his head and shoulders into the vehicle. Once the officer's head and shoulders were properly and lawfully inside the automobile (albeit for a different purpose [2]), objects falling within his plain view were not the result of a search and were subject to seizure. *Harris*

---

1. The vehicle did not belong to the accused. This fact was probably known to the police at the time, but it was not until trial that mention of ownership by someone else was revealed of record.

2. In Fourth Amendment cases, police conduct may be justified on any legal basis regardless of whether the police considered that basis at the time. *Arrington v. United States,* D.C.App., 311 A.2d 838, 840 (1973); *Payne v. United States,* 111 U.S.App.D.C. 94, 96, 294 F.2d 723, 725 (1961).

**38**

*v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). *See also South Dakota v. Opperman,* —— U.S. ——, 96 S.Ct. 3092, 3096, 3099, 48 L.Ed.2d ——, 44 U.S.L.W. 5294, 5295, and 5297 (1976).