Leo JACOBS, Appellant,

v.

UNITED STATES, Appellee.

No. 10814.

District of Columbia Court of Appeals.

Submitted Jan. 19, 1977.

Decided March 28, 1977.

Wallace E. Shipp, Jr., Columbia, Md., appointed by the court, was on the brief for appellant.

Earl J. Silbert, U. S. Atty., and John A. Terry, Richard H. Saltsman, David S. Krakoff and Thomas J. Tourish, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before KERN, YEAGLEY and MACK, Associate Judges.

MACK, Associate Judge:

Appellant, convicted of possession of a prohibited weapon (D.C. Code 1973, § 22–3214(a)), seeks reversal on the ground that the search which uncovered a blackjack violated his Fourth Amendment rights and that therefore his motion to suppress the weapon as evidence should have been granted.

I.

The arresting officer and appellant were the sole witnesses at the suppression hearing. Their testimony revealed that shortly after eleven o'clock on the morning of the arrest, appellant was observed driving an automobile which bore a "Rejected" inspection sticker. After following appellant for some blocks, during which time he ran a "rolling stolen" check on the car and ascertained that it belonged to one Leo Jacobs, the officer stopped the car for a "routine spot check." Appellant was unable to produce his license or registration, stating that both had been taken by a robber. According to the policeman, appellant identified himself as "Freddie Jacobs." After running the name through the computer and ascertaining that no driver's license had been issued in that name, the policeman radioed for assistance.

The officer testified further that on arrival, a backup officer informed him that he had just seen appellant bend down, as if to "stuff something under the seat." The first officer then asked appellant to get out of the car, at which time he was formally placed under arrest for driving without a permit. The police officer then reached under the passenger seat and retrieved a blackjack.

Appellant testified that he was sitting in the police cruiser when the blackjack was found. The police officer never testified as to precisely where appellant was when the search took place, but indicated that he was definitely outside his own car, under arrest, and quite probably handcuffed, if not in

fact in the police cruiser as appellant maintained. The officer testified that he had no reason to think appellant was armed, nor had he personally observed any furtive movements or suspicious behavior, and he was not fearful of appellant. In conducting the search he simply "was making sure there wasn't any weapons or contraband in the vehicle."

The government argued at the suppression hearing that the limited search of the car was justified as incident to the arrest. The trial court denied the motion to suppress, finding the search reasonable because of the combination of the arrest and the bending motion. When the case came on for trial before a different judge, the renewed motion to suppress was again denied, without argument. Appellant was found guilty after a trial by the court. This appeal followed.

## II.

As the government correctly observes, the issue before us is whether the search of appellant's automobile was valid as an incident of his arrest within the meaning of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). That decision, reviewing as it does the panoply of decisions arising as a result of Fourth Amendment challenges over more than a fifty year period, warrants constant rereading. Addressing the reasonableness of police conduct incidental to arrests, the Supreme Court said:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the later might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its

concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence. [395 U.S. at 762–63, 89 S.Ct. at 2040.]

Rejecting the temptation to distinguish precedential decisions [1] on artificial grounds, the Court further observed:

> No consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the area from which the person arrested might obtain weapons or evidentiary items. The only reasoned distinction is one between a search of the person arrested and the area within his reach on the one hand, and more extensive searches on the other. [395 U.S. at 766, 89 S.Ct. at 2042 (footnotes omitted).]

Our court closely considered *Chimel* as recently as last year when, in *Pinkney v. United States*, D.C.App., 360 A.2d 35 (1976), we held that the early morning hour search of an automobile was valid when its occupant (arrested pursuant to a bench warrant for a narcotics offense and described as armed) was standing "right next" to the door of his automobile, when his acquaintance (whom the arrestee had asked to take his car) was walking around behind the car, and when a pistol, with the butt up, was seen by the officer "tucked down between" the driver's seat and the console. There we said:

> Under these particular circumstances, we conclude that the pistol was in an area *Chimel* permits to be searched because it

1. Thus the Court held that *Harris v. United States*, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), and *United States v. Rabinowitz*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950),

"insofar as the principles they stand for are inconsistent with those that we have endorsed today, . . . are no longer to be followed." 395 U.S. at 768, 89 S.Ct. at 2043.

was one from within which appellant, the arrestee here, or his friend . . . might have gained possession of a weapon. [360 A.2d at 37.]

We are reluctant to go beyond the logic of *Pinkney* to find in the instant case a search to be reasonable where the arrestee was alone and out of the car, either handcuffed or seated in a police cruiser. We do not believe that the area searched was "within his reach" within the meaning of *Chimel*. Cf. *United States v. Manarite*, 448 F.2d 583, 593 (2d Cir.), *cert. denied*, 404 U.S. 947, 92 S.Ct. 281, 30 L.Ed.2d 264 (1971). Moreover, we do not believe the arresting officer, even with knowledge of appellant's bending movement as observed by another officer, had reason to fear the destruction of evidence in arresting appellant for driving without a permit after stopping him for a routine traffic spot check at 11:15 a. m.[2]

We find that this particular search exceeded the permissible scope under the Fourth Amendment of a search incident to a lawful arrest and that the motion to suppress was, therefore erroneously denied.

The judgment of conviction is

*Reversed.*

---

**2.** The government also cites *McGee v. United States,* D.C.App., 270 A.2d 348 (1970), and *United States v. Thomas,* D.C.App., 314 A.2d 464 (1974). We find those decisions distinguishable. *McGee*—in which the arresting officer observed a driver of an automobile in the act of making a movement toward the floorboard, similar to that here—involved exigent circumstances. *The movement was observed* as the officer, in vain, directed the speeding vehicle, over the police car's public address system, to stop, and after the vehicle ignored the officer's siren and flashing red light. After blocking the car with his own vehicle, the officer retrieved a pistol while the arrestee stood near the car with another officer. *Thomas* likewise involved a high speed chase and a significant risk of danger rather than a routine traffic stop. Moreover, that search was not incident to an arrest but was approved by this court on the basis of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "for the protection of officers who otherwise might be endangered if the occupants were permitted to reenter the vehicle at the end of an investigative inquiry." 314 A.2d at 468.