Ricardo B. PUNCH, Appellant,

v.

UNITED STATES, Appellee.

Harry A. JACKSON, Appellant,

v.

UNITED STATES, Appellee.

Robert W. ALSTON, Appellant,

v.

UNITED STATES, Appellee.

Alton R. COFFIELD, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10584, 10605, 10653 and 10889.

District of Columbia Court of Appeals.

Argued April 21, 1977.

Decided Sept. 22, 1977.

---

**3.** *Id.* at 22, 87 S.Ct. at 827.

Robert E. McMillen, Washington, D. C., appointed by this court, for appellant Punch.

Herbert P. Suskind, Washington, D. C., appointed by this court, for appellant Jackson.

Arthur L. Willcher, Washington, D. C., appointed by this court, was on the consolidated brief, for appellant Alston.

William T. Shannon, Washington, D. C., appointed by this court, for appellant Coffield.

Sallie H. Helm, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and James F. Rutherford, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and KERN, Associate Judges.

NEWMAN, Chief Judge:

Appellants Punch, Jackson, Alston and Coffield were jointly indicted, each charged with one count of carrying a pistol without a license and one count of possession of marijuana. Tried jointly by a jury, all were convicted of the weapons offenses but only Jackson was convicted of possession of marijuana. On appeal, each appellant raises search and seizure and evidentiary issues. Jackson challenges the trial court's refusal to accept his plea of guilty to the marijuana charge. Punch, Jackson and Alston challenge the sufficiency of the indictment to allege an "infamous crime." Finding no reversible error, we affirm.

On February 14, 1975, near midnight, Officer Swigert of the Metropolitan Police Department was on patrol in a marked police cruiser at the corner of Ninth and S Streets, N.W. It was dark, the street lights were on, as were the headlights of Swigert's police cruiser. Swigert observed an automobile, its headlights off, pass him and stop at a red light. As the vehicle stopped, the Officer observed that there were four persons in the car[1] and that the front seat passenger reached forward or leaned down and then sat upright.

Deciding to make a traffic stop because of the traffic violation (headlights not illuminated during hours of darkness)—Highway and Traffic Regulations, 17 D.C.Reg. § 119 (1970), Swigert pulled the car to the curb. He came to the driver's door, informed Punch that the headlights were off and requested his driver's license and auto registration. Punch produced the auto title and a temporary registration, but no driver's license. Swigert noted that the expiration date on the temporary registration was February 7 and that the temporary paper tags' expiration date had "fairly obviously" been altered by insertion of "1" in front of the "7," thereby converting 7 to 17.

The officer made a computer check and was informed that although the car was registered to the driver, the computer had no record of a driver's license issued in his name. During this time, Swigert was radioed by another police officer who informed Swigert of a prior arrest of Punch for carrying a pistol without a license. Being apprehensive, Swigert called for backup units.

When assistance arrived, Swigert asked everyone out of the car and arrested Punch for driving without an operator's permit. D.C.Code 1973, § 40–301(c). He then looked under the driver's seat and saw three pistols. The guns were seized and the other three appellants arrested. Subsequent search of the car at the scene disclosed three manila envelopes containing marijuana and another gun. A search of Jackson disclosed marijuana in his front pocket. Upon arrival at the station, with the car impounded, a further search disclosed four hats and five stocking masks. Motions to suppress the seized items were heard and denied.[2]

## Part I

 Where a traffic offense is committed within the presence of a police officer, a stop of the vehicle and subsequent arrest for the traffic offense is generally lawful. *Taylor v. United States,* D.C.App., 259 A.2d 835 (1969). An exception to this general rule may exist where the traffic stop is a sham to mask other purposes. *See Mincy v. District of Columbia,* D.C.App., 218 A.2d 507, 508 (1966). Non-random spot-checks of vehicles have recently been condemned. *United States v. Montgomery,* 561 F.2d 875 (D.C.Cir., 1977). *Contra, Palmore v. United States,* D.C.App., 290 A.2d 573, 582–83 (1972), *cert. granted on other grounds and on those grounds aff'd,* 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973).

---

1. These persons were later identified as appellants who were located in the car as follows: Punch, the driver; Jackson, the front seat passenger; Alston and Coffield, the rear seat passengers.

2. Although the trial judge did not state with clarity and specificity the grounds for his ruling as is required to facilitate appellate review, *see United States v. Jones,* D.C.App., 275 A.2d 541 (1971), it appears that he held the search lawful as one incident to a lawful arrest. *See* Part I, *infra.*

■ The stop here involved was predicated on a traffic offense committed in the officer's presence. There is no evidence that the stop was either a non-random spot-check or a sham. It was a constitutionally permissible stop. *Taylor v. United States, supra.* Appellant contends, however, that the vehicular searches thereafter were unconstitutional.

■ Our analysis of this contention must begin with the recognition that warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One of the "specifically established and well-delineated exceptions" is a search incident to a lawful arrest. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Where there is a valid arrest, police are authorized by this exception to search the person of the arrestee and "the area from within which he might have obtained either a weapon of something that could have been used as evidence against him." *Id.* at 768, 89 S.Ct. at 2043. The fact that the arrest is for a traffic offense does not narrow the authority to search incident thereto. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

■ When Officer Swigert arrested Punch, he had the following information. Punch was driving a car with altered temporary tags. He had previously been arrested for carrying a pistol without a license. The officer had seen the front seat passenger reach forward or lean down and then sit upright after their car had passed a marked police cruiser and come to a stop at a traffic light. These facts coupled with a valid arrest [3] alongside the car, justified the police officer in examining under the driver's seat of the vehicle, the seat closest to the arrestee, to look for weapons.[4] Having discovered three weapons, the subsequent search of the vehicle at the scene was constitutionally justified. *Hurley v. United States,* D.C.App., 273 A.2d 840 (1971).[5]

### Part II

Appellants' next assignment of error pertains to an evidentiary ruling of the trial court. Over appellants' objection, the trial judge admitted into evidence the hats and stocking masks and one of the four guns which is alleged to have been inoperative.[6] Their contention is that these items were not relevant to the crimes charged.

---

3. That it was determined some days later that Punch did have a valid operator's license is of no consequence in deciding whether, on the information known to the officer at the time, probable cause existed.

4. Our decision in *Jacobs v. United States,* D.C. App., 374 A.2d 850 (1977), does not command a different result. In *Jacobs,* the occupant of the car was "alone and out of the car, either handcuffed or seated in a police cruiser" at the time of the search. *Id.* at 852. We held the area searched (*i. e.* the car from which he had been removed and effectively isolated) not to be an area within his reach within the meaning of *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Here, the factual situation was significantly different. Among those differences were the number of persons occupying the car; the information available to the officer concerning a prior gun offense to give meaningful explication to the "furtive motions"; as well as the continuing access of at least the three persons not then under arrest (and perhaps even Punch) to any weapon under the seat.

5. While it is unclear whether appellants are presently challenging the station house search of the vehicle which led to the discovery of the hats and masks, we would note that given the fact that all the occupants of the car were under arrest and the car lacked valid tags, it was proper to impound the car. Once properly impounded, the inventory of its contents leading to discovery of these items was proper. *See South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

6. The trial judge later reversed himself and excluded this gun, a German automatic Mauser. However, the evidence disclosed all four guns were loaded when seized and Officer Swigert testified that, although the Mauser had a defective slide and would not fire under normal conditions on the firing range, it could be made to operate if forced. The appellants did not object, on evidentiary grounds, to the admission of the other three guns.

■ Relevant evidence is that which tends to make the existence or nonexistence of a fact more or less probable than would be the case without that evidence. *United States v. Carter,* 173 U.S.App.D.C. 54, 73, 522 F.2d 666, 685 (1975). Where evidence has probative value and is thus relevant, but possesses the potential for prejudicial misuse by the jury, the trial judge, in exercising his discretion as to its admission, must weigh the probative value against the risk of prejudicial impact. *Wooten v. United States,* D.C.App., 285 A.2d 308 (1971); *Drew v. United States,* 118 U.S.App.D.C. 11, 331 F.2d 85 (1964). Once a trial judge has made such a determination as to this balance and exercised his judgment, we will disturb this ruling only upon a showing that the trial judge abused his discretion. *Wooten v. United States, supra; Harper v. United States,* 99 U.S.App.D.C. 324, 239 F.2d 945 (1956).

■ Where the government utilizes the theory of constructive possession, it must establish (usually by circumstantial evidence) both guilty knowledge and access. *United States v. Anderson,* 165 U.S.App. D.C. 390, 509 F.2d 312 (1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975). The masks and the hats being in what appeared to be matched sets of fours,[7] along with the four loaded guns and four occupants of the car were, to say the least, probative on the issue of guilty knowledge. Thus, these items were relevant evidence. We cannot say that the trial judge struck an improper balance between probative value and risk of prejudicial impact. Hence, we cannot say he abused his discretion in admitting them.[8]

## Part III

Prior to trial, but after the suppression hearing, appellant Jackson sought to withdraw his plea of not guilty to possession of marijuana and to enter a plea of guilty to that count while continuing forward to trial on his not guilty plea to the gun charge. The trial judge did not seek to determine: (1) whether Jackson, after advice by counsel, or waiver thereof, fully understood the significance of his action in tendering a plea of guilty, *Kercheval v. United States,* 274 U.S. 220, 223–24, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); (2) whether he was acting intelligently, freely, and voluntarily, and not from coercion or impermissible inducement, *id.;* and (3) whether there was a factual basis for the plea. Super.Ct.Cr.R. 11. The government urged that without its consent, appellant could not plead guilty to one count of a two count indictment. Rather, the government urged that he should be required to plead guilty to both the weapon and the marijuana counts or not be permitted to plead guilty at all. The trial court, agreeing with the government's thesis, declined to accept the plea to the one count.

The applicable Superior Court Criminal Rule as it existed on January 6, 1976, the date of the tendered plea, read in relevant part:

> A defendant may plead not guilty, guilty, or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept . . . [such a plea without assuring it is voluntary, etc.]. . . . [Super.Ct.Cr.R. 11.]

As seen, Rule 11 appears to make the acceptance of a guilty plea discretionary with the trial court. Both the Superior Court rule and the federal rule, Fed.R. Crim.P. 11, have been so construed. *See Overholser v. Lynch,* 109 U.S.App.D.C. 404, 288 F.2d 388 (1961), *rev'd on other grounds,* 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962), as to the Superior Court rule and *McCoy v. United States,* 124 U.S.App.D.C. 177, 363 F.2d 306 (1966) as to the federal rule.[9]

---

7. Although there were in fact five stocking masks, two of them were intertwined as if one when they were seized.

8. We note that the trial judge instructed the jury on the limited purpose for which they were to consider this evidence.

9. Both the federal and local rules as they presently exist have deleted the language "The

After citing such cases as *Overholser* and *McCoy*, the government asserts that a factor in the exercise of the trial judge's discretion to accept a plea of guilty "lies in the intersecting roles of court and prosecutor in the plea bargaining function." (Brief at page 15.) Relying upon such cases as *Hockaday v. United States,* D.C.App., 359 A.2d 146 (1976), and *United States v. Ammidown,* 162 U.S.App.D.C. 28, 497 F.2d 615 (1973), the government asserts the trial court properly sustained the government's objection. And here, in part, lies the fallacy of the government's position. While a plea to one count of the indictment, leaving to be tried a legally unrelated count, may involve tactical advantage to one side or the other, it is not accurate to characterize such as a plea bargain. Such cases as *Hockaday* and *Ammidown* are simply inapposite.

Nor is the government's argument that the defendant sought to compel an involuntary severance persuasive. We first note that the doctrine of severance traditionally deals with two or more *trials*; not a plea of guilty on one count and a trial on the other count(s). However, even where a true severance is sought, *i. e.,* multiple trials, on the grounds that the joinder embarrasses or confounds the defendant in making his defense, denial of a request for severance may be reversible error. *See, e. g., Pointer v. United States,* 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894), *Cross v. United States,* 118 U.S.App.D.C. 324, 335 F.2d 987 (1964).

▆ No reason was addressed to the trial judge by government counsel for his opposition to accepting the plea. The reasons suggested by the government on appeal primarily relate to evidentiary matters.[10] We find none of these reasons valid.[11] In the words of Cardozo, discretion must be "methodized by analogy, disciplined by system." The Nature of the Judicial Process, 139, 141 (1921). Or as Mr. Justice Frankfurter said in his separate opinion in *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953): "Discretion without a criterion for its exercise is authorization of arbitrariness." [*Id.* at 496, 73 S.Ct. at 441.] The hallmark of a proper exercise of discretion is principled, albeit flexible, choice. Since no principled basis for the refusal by the trial judge to accept the plea of guilty is shown, we conclude the trial judge abused his discretion by refusing to accept the tendered plea of guilty, thereby committing error.

[18] Having concluded the trial judge committed error, we must determine whether appellant Jackson was prejudiced thereby mandating reversal. We are satisfied he was not. The evidence of his guilt of carrying a pistol without a license was overwhelming. *See United States v. Hamilton,* 492 F.2d 1110 (5th Cir. 1974). Further, the evidence of his admitted possession of marijuana may have been admissible at trial even if his guilty plea had been accepted.[12]

*Part IV*

Prior to trial, pursuant to D.C.Code 1973, § 23–111, the government filed informations of prior convictions as to appellants Punch, Jackson and Alston. These prior convictions were such that the convictions of the weapons offenses in this case constituted felony convictions punishable by up to

Court may refuse to accept a plea of guilty . . . ." We need not pause to consider the effect of these changes on these decisions since the effective date of the local rules change was after the plea offer in this case.

10. We note, without deciding, that under such cases as *Wooten, supra,* and *Drew, supra,* both cited in Part I of this opinion, the fact of Jackson's admitted possession of marijuana may have been admissible in the trial, even if his plea of guilty to marijuana possession had been accepted.

11. The government's reliance on *United States v. Hamilton,* 492 F.2d 1110 (5th Cir. 1974), is likewise misplaced. That case involved a codefendant who tendered a plea of guilty to one count of a multi-count indictment during the midst of a jury trial. The trial court found that acceptance of this plea would unduly prejudice the defense of the other defendants and rejected it. No such situation existed here.

12. *See* note 10, *supra.*

ten years imprisonment. D.C.Code 1973, § 22–3204.[13] Appellants contend that the indictment failed to notify them they were being held to answer for "an infamous crime." Their assertion is one of lack of notice by indictment.

 Appellants recognize that in *Smith v. United States,* D.C.App., 304 A.2d 28, 31, *cert. denied,* 414 U.S. 1114, 94 S.Ct. 846, 38 L.Ed.2d 741 (1973), this court, in dictum,[14] seems to have foreshadowed the resolution of this issue adverse to their position. While nothing in *M. A. P. v. Ryan,* D.C. App., 285 A.2d 310 (1971), or otherwise, requires a division of this court to follow dicta in a prior opinion, our independent analysis of the issue leads us to the same conclusion.

 Nothing in the Constitution explicitly requires that a grand jury determine whether a crime is an infamous one. Rather, the Constitution provides that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S.Const. amend. V. The intent of this protection is to limit prosecution of a defendant in certain types of offenses to those charged by a group of his peers acting independently of judge or prosecutor. *Ex parte Bain,* 121 U.S. 1, 11, 7 S.Ct. 781, 30 L.Ed. 849 (1887), *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

 Infamous offenses are distinguished from non-infamous offenses by the nature and quantity of the punishment. *Harvin v. United States,* 144 U.S.App.D.C. 199, 445 F.2d 675, *cert. denied,* 404 U.S. 943, 92 S.Ct. 292, 30 L.Ed.2d 257 (1971). It is the punishment difference that is the crucial distinction. The grand jury plays no role constitutionally in making this determination re punishment. Indeed, in the District of Columbia, prosecution may be commenced by grand jury indictment on non-infamous crimes as well. D.C.Code 1973, § 23–301. We are satisfied that once a grand jury has determined that probable cause exists to believe the defendant has committed each element of the offense which the government will be required to prove during presentation of its case to the trier of fact at trial, it has completed its required function. The indictment thus returned by the grand jury must meet two basic tests: (1) to apprise the accused of the crime charged with sufficient specificity to enable him to prepare his defense, and (2) to delineate the offense with sufficient specificity to protect against future jeopardy. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). The fact of a prior conviction being neither an element of the offense charged, *Anderson v. United States,* D.C.App., 326 A.2d 807 (1974), *cert. denied,* 420 U.S. 978, 95 S.Ct. 1405, 43 L.Ed.2d 659 (1975), nor necessary to double jeopardy protection, we hold that notice thereof need not be included in an indictment for the offense of carrying a pistol without a license to be sentenced as a felony upon proper compliance with D.C. Code 1973, § 23–111.

*Affirmed.*

---

**13.** Prior felony convictions as to appellant Jackson made his allowable maximum imprisonment a life term.

**14.** The issue before us in *Smith* pertained to whether the increased penalty for repeat of-

fenders (there the offense was petit larceny) required that prosecution be instituted by indictment rather than information. In the case at bar, prosecution was by indictment.