**William Earl BROCK, Appellant,**
v.
**UNITED STATES, Appellee.**

No. 13839.

District of Columbia Court of Appeals.

Argued March 21, 1979.

Decided July 30, 1979.

Rehearing and Rehearing En Banc Denied Sept. 12, 1979.

Martin Joel Krubit, Washington, D. C., appointed by the court, for appellant.

H. Lowell Brown, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, and John A. Terry, Peter E. George, and Thomas C. Hill, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER, NEBEKER and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

The appellant was convicted of three counts of receiving stolen property. D.C. Code 1973, § 22–2205. He urges us to reverse because (1) the stolen property, introduced at trial, was unconstitutionally seized, (2) the evidence was insufficient to support the convictions and (3) the trial court abused its discretion in denying a motion for a new trial. We affirm.

The arresting officers were investigating "known fencing locations" in the area where they saw appellant. When first observed, the appellant was sitting behind the wheel of a car bearing an expired Virginia inspection sticker and Oklahoma license plates. Although the car was parked, the engine was running. As two police detectives approached the car, the appellant moved as if reaching beneath the seat,

which caused one detective to warn the other to "watch out." Ordering the appellant out of the car, the police requested that he produce a driver's license and registration. The appellant responded that he had neither and that he was not driving, but was a passenger. From beneath the seat, one detective recovered a starter pistol, a blackjack, a police "Honorary" badge and numerous pieces of identification in different names. Sometime after the appellant got out of the car, a woman, whom the appellant identified as his girl frient "Kathy" or "Katy," got into the car. The appellant stated that she had a license to drive, and, indeed, the woman presented a license bearing a 1950 birth date and the name "Kathleen Serbey." In response to questions by the police, both the appellant and the woman indicated that her age was twenty-two. As the conversation took place in February of 1978, her answer was at odds with the license by about six years. It was later learned that the license was stolen and that the girl friend's real name was Sandra Truell. Both occupants of the car were arrested.[1] The police instituted a check of the license tags, which revealed that the tags did not belong to the car. Then, while the former occupants were outside the car, in custody, a detective reached inside the car and removed a wallet which was in plain view on the back seat. It contained approximately fifteen identification and credit cards. The appellant was subsequently convicted of possession of three stolen items: the "Kathleen Serbey" license, a Master Charge and a Gulf credit card that were found in the wallet.

Relying on *Jacobs v. United States,* D.C. App., 374 A.2d 850 (1977), the appellant claims, without asserting the unlawfulness of his arrest, that the cards contained in the wallet, two of which were later introduced at his trial, were unconstitutionally seized, and therefore should have been suppressed on his motion. We disagree. *Jacobs* involved an automobile, stopped for failure to display a valid inspection sticker, driven by a person who could produce neither a license nor registration. Before stopping the car, the police learned it was registered to Leo Jacobs. The driver identified himself as "Freddie Jacobs" and stated that his license and registration had both been stolen. After checking to ascertain if a driver's license was issued to the driver, the officer was informed by a backup officer that the driver had bent down, "as if to 'stuff something under the seat.'" *Id.* at 850. Ordering the driver from the car, the officer arrested him and then retrieved a blackjack from beneath the car seat. His search was to make "sure there wasn't any weapons or contraband in the vehicle." *Id.* at 851. We held that the search was unconstitutional because the officer "had [no] reason to fear the destruction of evidence in arresting appellant for driving without a permit after stopping him for a routine traffic spot check at 11:15 a. m." *Id.* at 852 (footnote omitted). The facts here, however, are materially different from those in *Jacobs.* They are more closely aligned with the circumstances in *Bell v. United States,* 102 U.S.App.D.C. 383, 254 F.2d 82, *cert. denied,* 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958).

In *Bell,* the police stopped a car because it was being driven at night without its lights on. The back seat contained 40 cartons of cigarettes, for which the car's occupants offered no plausible explanation. The circuit court held that there was probable cause to believe a felony had been committed. Therefore, the search was constitutional, being incidental to a valid arrest, and the contested evidence was properly admitted. The appellant in the instant case was in the driver's seat of the car, he had no license, he presented no registration, he had only one form of identification and that card bore another person's photograph, and he stated that his girl friend had a license. The girl friend stated her age was twenty-two years, which did not correspond with the 1950 birth date on the license she

---

1. The appellant was arrested for operating a vehicle without a permit; Truell was arrested for using the permit of another.

presented. The car had Oklahoma plates and an expired Virginia inspection sticker. Under these circumstances, the police detectives had "probable cause to suspect that the car had been stolen." *See, e. g., United States v. Faulkner,* 488 F.2d 328, 330 (5th Cir. 1974). The police therefore properly made "a search of the automobile for the purpose of discovering further indicia of ownership," *id.,* including the search of the contents of the wallet. *See Patterson v. United States,* D.C.App., 301 A.2d 67, 69 (1973). Given the propriety of the search of the wallet, and the resulting seizure of the cards, the admission of the two cards into evidence was proper.

## II

■ The appellant's second point of contention is that the evidence was insufficient to support his convictions. We will address each count separately to determine whether the elements of the crime were proved beyond a reasonable doubt.[2]

■ Referring only to evidence presented by the government, the appellant contends in his brief that the prosecution failed to prove that the Gulf credit card was stolen, *citing Brown v. United States,* D.C.App., 304 A.2d 21 (1973) (no evidence presented to prove that 2,000 blank government identification cards, in appellant's possession, were stolen). At oral argument, however, the appellant conceded that we must look to all of the evidence to determine sufficiency. *See, e. g., In re A.B.H.,* D.C.App., 343 A.2d 573, 575 (1975). The "stolen" element of the crime is supported by testimony of the defendant's father, who, on cross-examination by the government, stated that he "found" the card at a service station, that he took it and that he made no effort to contact Gulf or the person whose name was on the car. *See Hunt v. United States,* 115 U.S.App.D.C. 1, 316 F.2d 652 (1963). The appellant's contention that there was no evidence to support an

intent to defraud is without merit, as evidence demonstrated his intent to fraudulently deprive the owner of possession. Furthermore, that the appellant's own cards were commingled in the wallet with the stolen cards sufficiently demonstrates that the appellant possessed (and therefore had received) the stolen cards in the wallet.

As to the Master Charge card found in the wallet, the appellant argues that the prosecution failed to prove that he knew or had reason to know it was stolen. A jury may reasonably infer knowledge solely from the possession of recently stolen property, *e. g., Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), "where the accused is found in exclusive possession of property recently stolen and the possession is not otherwise explained." *Pendergrast v. United States,* 135 U.S.App. D.C. 20, 31, 416 F.2d 776, 787, *cert. denied,* 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969). The Master Charge card was stolen thirty months prior to the appellant's arrest. This, of itself, would not support an inference of knowledge. *See United States v. Taylor,* 480 F.2d 154 (9th Cir. 1973) (per curiam) (two years not "recent" so as to support conviction involving credit card). However, this card was found together with other stolen property that the appellant knew to be stolen, including the stolen driver's license he employed in his earlier attempt to extricate himself. From these two factors, a jury properly could have found beyond a reasonable doubt that the appellant knew that the Master Charge card was stolen.

The final stolen item is the driver's license presented to the police by the appellant's girl friend. The appellant contends that the evidence did not support a finding that he possessed the license. At the time that the license was presented, the police suspected that the appellant was guilty of driving without a license. To exculpate himself, he in effect directed his girl friend

---

2. The government must prove that a (1) stolen (2) item of value (3) was received by the defendant (4) with an intent to defraud and (5) while the defendant knew or had reason to

know that the item was stolen. *See, e. g., Charles v. United States,* D.C.App., 371 A.2d 404, 406 (1977).

to produce a driver's license. By referring to her by the name on the stolen license, he communicated that the stolen property should be presented. Although his attempted exoneration failed, he nevertheless employed the license by directing another in its use. This evidence of his dominion and control over the stolen property was sufficient, under the law, to support the finding that he "possessed" it. One need not physically hold an item to possess it. *See County Court of Ulster County v. Allen,* —— U.S. ——, 99 S.Ct. 2213, 2227–28, 60 L.Ed.2d 777 (1979) (three occupants of car convicted of illegal possession of firearms in handbag of fourth occupant); *Pratti v. United States,* 389 F.2d 660 (9th Cir. 1968) (defendant caused another man to give heroin to a third). The appellant did not even need to be present when the license was presented. *See Church v. State,* 317 So.2d 386 (Miss. 1975) (defendant had two men deliver stolen goods to a third). The key is the degree of control and dominion over the license that the appellant was shown, by the evidence, to have exercised.

### III

We have reviewed the appellant's other claims and find no reversible error. The trial court had attempted to keep reference to the starter pistol and the blackjack out of the trial. However, an improper reference to the starter pistol was made by an arresting officer. The denial of a mistrial was not an abuse of discretion.[3] An immediate curative instruction was given. "A crucial assumption underlying [our system of trial by jury] is that juries will follow the instructions given them by the trial judge." *Parker v. Randolph,* —— U.S. ——, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979).

Accordingly, the judgments of conviction are

*Affirmed.*[4]

---

3. *See Hammond v. United States,* D.C.App., 345 A.2d 140, 141 (1975).

4. The remaining contentions are without merit. The timing of the impeachment of appellant by a prior petit larceny conviction was not error. Although a police officer testified concerning certain hearsay statements of Mr. Brock, Sr., regarding the way by which he came to possess the Gulf card, the admission of this testimony does not constitute reversible error. When the older Mr. Brock testified for the defense, he related essentially the same facts that the officer gave. We conclude that the error of admitting the hearsay statements does not warrant reversal.