NO. 07-04-0461-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



SEPTEMBER 16, 2004


______________________________



In re RONALD H. MARR, JR.,



 Relator


_____________________________


 Original Proceeding 

_______________________________



Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

 Pending before this court is the application of Ronald H. Marr, Jr., for leave to file
a petition for writ of mandamus. As we construe the petition, Marr asks us to order the
District Attorney's office of Lubbock County, the judge of the 137th District Court of Lubbock
County, and his court-appointed counsel to "hear and present" various motions he has filed
as well as a petition for writ of habeas corpus. For the reasons which follow, we deny the
petition.

 First, rules of procedure obligate one seeking mandamus relief to accompany his
petition with an appendix. Tex. R. App. P. 52.3(j). The latter must include, among other
things, a "certified or sworn copy of . . . [the] document showing the matter complained of
. . . ." Id. 52.3(j)(1)(A). In this case, the documents showing the matters complained of
would at the very least be copies of the motions and writ of habeas corpus which Marr
alleges were not presented or addressed. Although he refers to those documents as being
attached to his petition, we do not find them and there is no record before us. Thus, relator
not only failed to comply with the rules of appellate procedure regulating mandamus, but
also denied us a record sufficient to enable us to assess his complaints.

 Second, to the extent that relator wants us to order an entity or person other than
a trial court to act, we, as an appellate court, have jurisdiction to do so only when
necessary to enforce our jurisdiction over a pending appeal. In re Washington, 7 S.W.3d
181, 182 (Tex. App.--Houston [1st Dist.] 1999, orig. proceeding). At bar, however, relator
fails to allege that any such appeal is pending. Nor does he argue that the relief requested
is necessary to assure the proper resolution of any appeal that he may have pending.
Thus, and to the extent that it encompasses the district attorney and court-appointed
counsel, we have no jurisdiction over the request for mandamus relief.

 Third, and to the extent that relator requests we order the trial court to act upon
various motions or petitions for writs, nothing of record illustrates that the requests were
presented to the trial court or that a trial court refused to act upon them. One asking for
mandamus relief must first show that the trial court was asked to do something and that it
refused the request. O'Connor v. First Court of Appeals, 837 S.W.2d 94, 97 (Tex. 1992).

 Accordingly, the application for leave to file a petition for writ of mandamus is denied.

 

 Brian Quinn 

 Justice



between complainant's shoulder blades. He was sent to the school nurse and
when she raised his shirt she noticed a protrusion on his back as well as linear and pox-like scars, scratches, and bruises. She described what she observed as "quite sickening." 
Complainant told her he had fallen backwards.

 Appellant, complainant's adoptive mother, was contacted by the school and upon
meeting with the nurse, she agreed that medical attention was necessary. However,
according to the nurse, appellant's response to complainant's injuries was, "it's really
getting rough at the bus stop." The school nurse scheduled a doctor's appointment and
alerted the doctor's nurse that she suspected child abuse and recommended a full
examination. On December 3, 1999, complainant was taken to a pediatric facility and
examined by nurses and Dr. James Lukefahr. Complainant reluctantly undressed and put
on a paper gown; however, he was adamant about not having his injuries photographed. 
Although his vision, throat, and eardrums were normal, his left earlobe was hard and
swollen. Multiple bruises, scars, lacerations, and lesions were observed on his upper
body. His skin had a shiny appearance as if from healed burns. Appellant did not permit
an examination of the victim's legs or genitalia. She also refused to give a street address
for medical records and was vague when questioned. Child Protective Services (CPS)
was notified of the suspected abuse and after an investigation, complainant was removed
from appellant's care and taken into custody. On December 6, 1999, he was taken to Dr.
Lukefahr by a caseworker for a complete examination and tests. At trial expert testimony
established that complainant suffered many injuries and burns and Dr. Lukefahr explained
that they were not accidental, but were inflicted by deliberate force.

 Officer Richard Rennison testified that in late 1999 he received a referral from CPS
to investigate the suspected abuse. He questioned complainant's stepfather and went to
the home to conduct tests on water temperature and other matters. After his investigation
he met with the district attorney to file charges against appellant and the stepfather and
arrest warrants were issued for both. Appellant was tried separately and convicted of
three separate counts of injury to a child. 

 By her first issue, appellant contends the trial court erred by failing to grant her
motion to quash the indictments which were in violation of the Texas and United States
Constitutions. We disagree. The standard of review of a trial court's ruling on a motion
to quash an indictment is abuse of discretion. Thomas v. State, 621 S.W.2d 158, 163
(Tex.Cr.App. [Panel Op.] 1980) (on reh'g). The Sixth Amendment to the United States
Constitution guarantees an accused the right to be informed "of the nature and cause of
the accusation," and Article I, Section 10 of the Texas Constitution provides that an
accused "shall have the right to demand the nature and cause of the accusation against
him . . . ." See also Tex. Code Crim. Proc. Ann. arts. 21.02(7), 21.03, and 21.04 (Vernon
1989). Notice in an indictment must be with sufficient clarity and detail to enable the
defendant to anticipate the State's evidence and prepare a proper defense. Eastep v.
State, 941 S.W.2d 130, 132 (Tex.Cr.App. 1997) (en banc), overruled on other grounds,
Riney v. State, 28 S.W.3d 561 (Tex.Cr.App. 2000). An indictment must allege on its face
the facts necessary to (1) show that the offense was committed, (2) bar a subsequent
prosecution for the same offense, and (3) give the defendant notice of what he is charged
with. State v. Edmond, 933 S.W.2d 120, 131 (Tex.Cr.App. 1996) (en banc). A motion to
quash should be granted when the language in an indictment concerning the defendant's
conduct is so vague or indefinite as to deny the defendant effective notice of the acts
allegedly committed. Daniels v. State, 754 S.W.2d 214, 217 (Tex.Cr.App. 1988) (en banc). 
The State is not required to plead evidentiary facts that are not essential to provide notice
to the defendant. Id. at 218. 

 The indictments in cause numbers 00CR0214, 00CR0215, and 00CR0216 provide,
respectively, that appellant:

 did then and there intentionally and knowingly cause serious bodily injury to
[complainant] . . . by then and there striking and hitting the said
[complainant] with an object which is not known to the Grand Jury

 did then and there intentionally and knowing cause serious bodily injury to
[complainant] . . . by then and there burning the skin of the said
[complainant] with a liquid which is not known to the Grand Jury; and

 did then and there intentionally and knowingly cause serious bodily injury to
[complainant] . . . by then and there burning the skin of the said
[complainant] with a curling iron.


 By her motion to quash in cause number 0214, appellant alleged the indictment did
not comply with article 21.02 of the Texas Code of Criminal Procedure. By her motions to
quash in cause numbers 0215 and 0216, she challenged the portions of the indictments
alleging serious bodily injury as being insufficient and in violation of the guarantees of the
Sixth Amendment of the United States Constitution and Article I, Section 10 of the Texas
Constitution. The State argues that because her challenge below to the indictment in
cause number 0214 does not comport with her argument on appeal, it is not preserved for
review. See Trevino v. State, 991 S.W.2d 849, 855 (Tex.Cr.App. 1999) (holding that to
preserve an issue for appellate review, the complaint on appeal must at least minimally
comport with the complaint at trial). We agree, and review only her contentions regarding
the indictments in cause numbers 0215 and 0216. 

 An indictment must set forth everything necessary to be proved in plain and
intelligible words. See Tex. Code Crim. Proc. Ann. arts. 21.02(7) and 21.03 (Vernon
1989). Appellant was charged with causing serious bodily injury to complainant by burning
his skin with a liquid (0215) and with a curling iron (0216). Appellant contends that the
indictments should have alleged which definition of serious bodily injury the State intended
to prove. However, because serious bodily injury is defined in section 1.07(46) of the
Texas Penal Code Annotated (Vernon 1994), any further allegations of the nature of the
injury are merely evidentiary and are not required. Montgomery v. State, 704 S.W.2d 359,
363 (Tex.App.--Corpus Christi 1985, pet. ref'd); see also McKinney v. State, 59 S.W.3d
304, 310 (Tex.App.-Fort Worth 2001, pet. ref'd) (holding that an indictment alleging that
causing serious bodily injury to a child by hot liquid provided adequate notice of the
charges against which the defendant must defend). We conclude the allegations
contained in the indictments were sufficient to notify appellant of the nature and cause of
the accusations and thus, the trial court did not abuse its discretion in denying her motions
to quash. Issue one is overruled.

 By her second issue, appellant challenges the legal and factual sufficiency of the
evidence to support a finding that she intentionally and knowingly committed the charged
offense and that complainant suffered serious bodily injury. We disagree. When both the
legal and factual sufficiency of the evidence are challenged, we must first determine
whether the evidence is legally sufficient to support the verdict. Clewis v. State, 922
S.W.2d 126, 133 (Tex.Cr.App. 1996). In conducting a legal sufficiency review, we must
determine whether, after viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 2789,
61 L.Ed.2d 560, 573 (1979); Geesa v. State, 820 S.W.2d 154, 157 (Tex.Cr.App. 1991),
overruled on other grounds, Paulson v. State, 28 S.W.3d 570, 573 (Tex.Cr.App. 2000). 
As an appellate court, we may not sit as a thirteenth juror, but must uphold the jury's
verdict unless it is irrational or unsupported by more than a mere modicum of evidence. 
Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988).

 After conducting a legal sufficiency review under Jackson, we may proceed with a
factual sufficiency review. Clewis, 922 S.W.2d at 133. The Court of Criminal Appeals has
directed us to ask whether a neutral review of all the evidence, both for and against the
finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the fact finder's determination, or the proof of guilt, although adequate if
taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11
(Tex.Cr.App. 2000) (adopting complete civil factual sufficiency formulation); see also King
v. State, 29 S.W.3d 556, 563 (Tex.Cr.App. 2000). Accordingly, we will reverse the fact
finder's determination only if a manifest injustice has occurred. Johnson, 23 S.W.3d at 12. 
In conducting this analysis, we may disagree with the jury's determination, even if
probative evidence supports the verdict, but must avoid substituting our judgment for that
of the fact finder. See Santellan v. State, 939 S.W.2d 155, 164 (Tex.Cr.App. 1997).

 A person commits injury to a child by intentionally, knowingly, recklessly, or with
criminal negligence, acting to cause serious bodily injury. Tex. Pen. Code Ann. §
22.04(a)(1) (Vernon Supp. 2002). Serious bodily injury is bodily injury that creates a
substantial risk of death or that causes death, serious permanent disfigurement, or
protracted loss or impairment of the function of any bodily member or organ. Tex. Pen.
Code Ann. § 1.07(46) (Vernon 1994). The culpable mental states of intentionally and
knowingly are defined as follows:

 A person acts intentionally . . . with respect to the nature of his conduct or
to a result of his conduct when it is his conscious objective or desire to
engage in the conduct or cause the result.

 A person acts knowingly . . . with respect to the nature of his conduct or to
circumstances surrounding his conduct when he is aware of the nature of his
conduct or that the circumstances exist. A person acts knowingly . . . with
respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.


Tex. Pen. Code Ann. § 6.03(a) and (b) (Vernon 1994). In determining the legal sufficiency
of the evidence to show appellant's intent or knowledge, and faced with a record that
supports conflicting inferences, we must presume-even if it does not affirmatively appear
in the record-that the trier of fact resolved any such conflict in favor of the prosecution,
and must defer to that resolution. Couchman v. State, 3 S.W.3d 159, 163 (Tex.App.-Fort
Worth 1999, pet. ref'd), citing Mason v. State, 819 S.W.2d 839, 846 (Tex.Cr.App. 1991). 
Further in circumstantial evidence cases it is not necessary that every fact point directly
and independently to the accused's guilt; it is enough if the conclusion is warranted by the
combined and cumulative force of all the incriminating circumstances. Johnson v. State,
871 S.W.2d 183, 186 (Tex.Cr.App. 1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579,
128 L.Ed.2d 222 (1994); Armstrong v. State, 958 S.W.2d 278, 283 (Tex.App.-Amarillo
1997, pet. ref'd).

 Injury to a child is a result-oriented crime for which the Legislature intended to
punish the result of the defendant's conduct, not the conduct itself. Alvarado v. State, 704
S.W.2d 36, 39 (Tex.Cr.App. 1985) (en banc); Assiter v. State, 58 S.W.3d 743, 748
(Tex.App.-Amarillo 2000, no pet.). Intent may be inferred from the acts and the words of
the accused as well as the surrounding circumstances. Ledesma v. State, 677 S.W.2d
529, 531 (Tex.Cr.App. 1984) (en banc); Hill v. State, 883 S.W.2d 765, 769
(Tex.App.-Amarillo 1994, pet. ref'd). 

 Appellant has been complainant's adoptive mother since he was an infant. In 1999,
when complainant was in the fourth grade, he began falling asleep during classes. 
Teachers also noticed that he was stealing snacks and lunch money and eating out of the
trash in the cafeteria. Although he was not characterized as a discipline problem, he did
not follow directions. Phone calls were made to appellant and discipline referrals were sent
home. School staff also noticed that complainant was walking with difficulty as if he were
in pain. In November, complainant was sent to the school nurse with an injury to his left
ear, which she characterized as "cauliflower ear." Joy Blackman, a physician's assistant,
testified at trial that "cauliflower ear" is caused by repetitive blows and is common in boxers. 
She also testified that the condition persists for a long period of time. Appellant told the
school nurse that complainant had probably been stung in the ear; however, medical
testimony confirmed that the injury was not consistent with a bite or sting, which would have
healed quickly. 

 Complainant's sleeping habit worsened, and on December 2, one of his teachers
asked the assistant principal to wake him. As he placed his hand on complainant's back,
he felt a large mass between his shoulder blades. He was sent to the school nurse to have
his spine checked and as the nurse raised his shirt, she observed the lump as well as other
scars, bruises, and scratches on his upper body. Appellant was scheduled to meet with
school staff the following day regarding tests to be conducted on complainant and the nurse
decided to wait until then to talk about the mass on complainant's back. On December 3,
when appellant met with the nurse, she agreed that complainant required medical attention. 
The school nurse scheduled an appointment with a pediatric facility and alerted the nurse
about suspected abuse and suggested a thorough examination. Upon arriving at the
doctor's office, appellant indicated complainant was seeing the doctor for a possible
problem with his spine and for excessive sleeping. After the examination, the doctor's office
referred the matter to CPS to investigate and complainant was removed from appellant's
care. 

 On December 6, complainant returned to the doctor's office with a caseworker for
a bone scan, x-rays, and an MRI. At trial, Blackman, who assisted Dr. Lukefahr when he
examined complainant, testified to the following injuries found on complainant:


 cauliflower ear which was not consistent with a sting or bite;
 looped scars to the head which are caused by being struck with a cord
or strap that has been doubled over;
 healed scars on either sides of the eyes;
 four linear almost healed cuts on the neck that looked like fingernail
scratches;
 healed looped scars on the right lateral thigh and buttock;
 healed linear and looped scars on the back of the left thigh;
 a round scar consistent with a cigarette burn on the top of the right
hand;
 healed linear and looped scars on the left hand;
 healed burn scars from a hot liquid underneath the arms; 
 healing abrasion on the right shoulder with a firm bony prominence; 
 healed cuts on the front of the chest;
 overlapping injuries which could be either abrasions or burns;
 a lesion on the front of the right shoulder; 
 healed burns on the right pelvic bone and groin area;
 healed contact burns to the scrotum and shaft of the penis; and
 an inverted V-scar on the chest most likely caused by a knife or similar
sharp object.



Blackman also testified that looped scars are not accidental and are consistent with child
abuse from a looped belt or cord. The burns to the groin area had sharp margins and clean
borders, and thus were caused by contact. A bone scan showed post-traumatic
changes-healing scars-from fractures or trauma. She concluded complainant was the
victim of child abuse. A follow-up visit in April 2000 indicated a better attitude in
complainant and better eating and sleeping habits while living in a children's home. In
those few months complainant gained over ten pounds and grew six and one-half
centimeters. The injury to his ear, however, remained unchanged from December and she
testified it could be permanent.

 Doctor Lukefahr testified that complainant was ten years old when he examined him
and that he exhibited an inordinate number of injuries for a child that age. He further
testified that complainant's scars are permanent. He described the injuries as non-accidental. He explained that the burns to complainant's flank area under his arms could
not have been caused by a hot shower. They were more rounded and had a "sort of flow"
whereas burns from a hot shower leave a salt and pepper appearance because of the
drops. Moreover, an ambulatory person would make an effort to get away from the hot
water before being burned. He also testified that "cauliflower ear" is caused by a blow
strong enough to cause bleeding under the skin and form a blood clot that attaches itself
to the cartilage and becomes permanent. He explained that the mass on complainant's
back was caused by either a healed fracture to the shoulder blade or was a benign growth,
but could not reach a conclusion on what caused it. Regarding the contact burns to
complainant's genital area, he categorized them as deep second degree burns which must
have been extremely painful and would have caused him to walk with his legs spread to
minimize contact with his clothes. He did not believe that such burns could be caused by
falling on a hot object; rather, he was of the opinion that a small clothes iron could have
been applied to the scrotum and also could not rule out the possibility that a curling iron
was used. 

 On April 3, 2000, while the victim was residing in a children's home, he was visited
by Rennison and Meredith Shropshire, a caseworker who had met with complainant during
the preceding months. According to Shropshire, up until April 3, the victim had not revealed
the name of the person who abused him. Rennison was not in uniform and was driving an
unmarked patrol car. Complainant sat in the front seat with Rennison and Shropshire sat
in the back. They took him for ice cream and spent time trying to make him comfortable
before questioning him. Rennison asked a few questions about the injuries before making
an audio tape of complainant's statement. Complainant was aware he was being taped and
told Rennison that appellant had heated water in a microwave oven and thrown it on him
because he was "bad." He also claimed that burns to his genital area were made by
appellant with a curling iron. 

 At the time of trial, complainant testified that he had not seen appellant in over a year
and that he loved her and wanted to live with her. He could not recall falling asleep during
classes and could not remember his visit to Dr. Lukefahr in 1999. He also denied that
appellant ever injured him. He claimed never to have observed scars on his body, but did
acknowledge burns to his genital area which he testified were the result of jumping into a
tub full of hot water twice. He could not explain why his knees and feet were not burned. 
When questioned about his difficulty in walking, he claimed he injured his knee in a fight. 
Regarding the injury to his ear, he testified that he woke up one day and his ear was
swollen.

 The only witness for the defense was complainant's biological father. Complainant
had been living with him at the time of trial and had been doing so for a month and a half. 
Although he had not been involved in complainant's life on a regular basis, he could not
recall appellant hurting complainant. Approximately one week before trial, he took it upon
himself to photograph complainant's body. The photographs were introduced into evidence
and according to the father's testimony showed no permanent scars. 

 Based on the evidence presented and the combined and cumulative force of all the
incriminating circumstances and deferring to the jury's resolution of appellant's intent or
knowledge, we conclude the evidence established appellant's culpable mental state that
she desired to engage in conduct reasonably certain to cause serious bodily injury. Thus,
under Jackson, 443 U.S. at 318, the evidence is legally sufficient to establish that appellant
intentionally and knowingly committed injury to a child. Both Blackman and Dr. Lukefahr
testified that complainant's "cauliflower ear" could be permanent and Dr. Lukefahr also
concluded that complainant's scars were permanent. Complainant's father testified,
however, that based on his observations, complainant did not have any permanent scars.
The photographs taken by complainant's father depicting complainant's face, upper body,
and frontal genital area do not show the extensive injuries testified to by the State's
witnesses; however, the unauthenticated photographs were taken several years after the
investigation of abuse. Thus, the jury as the sole trier of fact was free to resolve conflicts
or inconsistencies in the evidence and believe all, some, or none of the evidence. Hitt v.
State, 53 S.W.3d 697, 709 (Tex.App.-Austin 2001, pet. ref'd), citing Bowden v. State, 628
S.W.2d 782, 784 (Tex.Cr.App. 1982) and Chambers v. State, 805 S.W.2d 459, 461
(Tex.Cr.App. 1991). We conclude the evidence is legally sufficient to show that appellant
inflicted serious bodily injury upon complainant.

 Concluding that the evidence is legally sufficient to support the verdict, we must now
determine, after a neutral review of all the evidence, whether it is factually sufficient to
support the verdict. Johnson, 23 S.W.3d at 11. It is the exclusive province of the fact finder
to determine the credibility of the witnesses and the weight to be given their testimony. 
Johnson v. State, 571 S.W.2d 170, 173 (Tex.Cr.App. 1978); Armstrong v. State, 958
S.W.2d 278, 284 (Tex.App.--Amarillo 1997, pet. ref'd).

 In addition to the evidence reviewed under our legal sufficiency analysis, the State
also presented evidence that appellant had previously injured complainant. Doctor
Lukefahr testified that according to medical records, when complainant was six he was
taken to the emergency room by appellant for a fracture to his left arm. She claimed he had
fallen from a couch, but according to Dr. Lukefahr, it was unusual for a child to have a
fracture so close to the shoulder and that the injury was probably caused by a substantial
amount of force in a wrenching, pulling, or twisting manner. According to a nurse's
assessment dated July 22, 1996, complainant claimed appellant twisted his arm. Five
years later at trial, however, complainant testified that he broke his arm when a bicycle fell
on him. A CPS caseworker testified that following the injury to the arm, complainant was
removed from appellant's home for a year until she completed psychological testing and
therapy. 

 A former friend and neighbor of appellant's testified that when complainant was
between seven and nine months old, she entered appellant's small apartment to find
complainant confined to a dining room table by duck tape across his ankles, legs, arms,
and mouth. According to the witness, appellant complained that the baby had been crying
all day and was getting on her nerves. When complainant was two years old, appellant and
the witness worked at a small daycare. On one occasion, complainant noticed appellant
and ran up to her with outstretched arms crying out, "mama, mama" and appellant "popped"
him in the head with a cordless telephone and told him to get away. After a neutral review
of all the record evidence under Johnson, 23 S.W.3d at 11, and without substituting our
own judgment, we conclude the evidence is factually sufficient to support the verdict. Issue
two is overruled.

 By her third issue, appellant complains the jury was biased because juror Mary
Allums failed to disclose during voir dire knowledge of facts of the case. We disagree. By
her motions for new trial, appellant alleged the following:

 Newly discovered evidence.

 There is newly discovered evidence which would effect the outcome of the
case in that Juror Mary Allums had a prejudice against the defendant and a
bias for the state which she failed to disclose during voir dire when she was
questioned. Juror Allums would have been struck for cause, if she had
answered truthfully concerning her knowledge of the defendant and/or the
case.

 

Attached to the motion is a verification by trial counsel; however, no affidavit in support of
the allegation is attached. See generally McIntire v. State, 698 S.W.2d 652, 658
(Tex.Cr.App. 1985) (en banc) (holding that a motion for new trial alleging juror misconduct
must be supported by the affidavit of a juror or some other person in the position to know
the facts). Although no record references were provided in her argument as required by
Rule 38.1(h) of the Texas Rules of Appellate Procedure, our review of the voir dire
proceedings reveals that the State asked at least seven questions of Allums, none of which
indicated knowledge of the facts of the case that would show bias toward appellant. During
defense counsel's voir dire examination no questions were asked of Allums.

 The Court of Criminal Appeals has indicated great reluctance in engaging in
speculation regarding bias, if any, of a juror in favor of or against a defendant. Jackson v.
State, 548 S.W.2d 685, 697 (Tex.Cr.App. 1977). In Jackson, the Court noted that it was
incumbent upon appellant to establish bias during voir dire and that failure to do so and
present a challenge for cause waived any error. Id. Appellant's conclusion in her motion
for new trial that when questioned during voir dire Allums failed to disclose a bias against
her is not supported by the record. The State's questions to Allums were not designed to
elicit bias and the defense did not question the panel, specifically Allums, regarding bias. 
Without a bill of exception demonstrating that Allums was biased or an affidavit showing the
same, appellant has not preserved her complaint for appeal. See Roberts. v. State, 172
Tex. Crim. 500, 360 S.W.2d 883, 886 (1961); Henson v. State, 650 S.W.2d 432, 434-35
(Tex.App.-Houston [14th Dist.] 1982), aff'd 683 S.W.2d 702 (Tex.Cr.App. 1984). Issue
three is overruled.

 By her fourth issue, appellant contends the trial court erred in admitting the testimony
of physician assistant Blackman because it failed to have a scientific basis and was
inadmissible under Rule 702 of the Texas Rules of Evidence. She further argues that the
trial court erred in denying her request to voir dire Blackman on her qualifications as an
expert regarding burns. We disagree. When Blackman testified that complainant's burn
scars were in a liquid pattern, i.e., caused by hot liquid or scalding, defense counsel
requested to voir dire the witness on her "expertise in the area of burns." After the trial
court denied the request, Blackman testified about complainant's healed burn injuries as
well as other injuries for approximately eight pages of the reporter's record. After an off-the-record bench conference, defense counsel announced that "[b]ased upon counsel's
next question we really do not have a voir dire challenge concerning the qualifications of
this witness." Based upon appellant's withdrawal of her request to voir dire Blackman, we
conclude that trial court error, a question we do not decide, was waived. See generally
Lemos v. State, 27 S.W.3d 42, 47 (Tex.App.-San Antonio 2000, pet. ref'd) (holding that
counsel's comment, "I withdraw my objection to that" waived any complaint. Issue four is
overruled. 

 By her final issue, appellant contends the trial court improperly admitted
complainant's tape recorded statement because it did not meet the statutory requirements
of an outcry statement. We disagree. A trial court has broad discretion in determining the
admissibility of evidence and its ruling will not be disturbed on appeal absent a clear abuse
of discretion. Garcia v. State, 792 S.W.2d 88, 92 (Tex.Cr.App. 1990) (en banc). An outcry
statement is one made by the child against whom the offense was allegedly committed to
the first person, 18 years of age or older, other than the defendant. Tex. Code Crim. Proc.
Ann. art. 38.072, § 2(a) (Vernon Supp. 2002). An outcry statement is not inadmissible if:

 (1) on or before the 14th day before the date the proceeding begins, the party
intending to offer the statement:

 (A) notifies the adverse party of its intention to do so;

 (B) provides the adverse party with the name of the witness
through whom it intends to offer the statement; and 

 (C) provides the adverse party with a written summary of the
statement;

 (2) the trial court finds, in a hearing conducted outside the presence of the
jury, that the statement is reliable based on the time, content, and
circumstances of the statement; and 

 (3) the child testifies or is available to testify at the proceeding in court or in
any other manner provided by law.


Art. 38.072 § 2(b). Compliance with the statute is mandatory for the statement to be
admissible. Long v. State, 800 S.W.2d 545, 547 (Tex.Cr.App. 1990). 

 On the 14th day before trial, the State filed its notice of intent to use complainant's
outcry statement made to Officer Rennison about the alleged abuse. A written summary
of the statement provided:

 I was burned from hot water my Mom put on me. She heated it up in the
microwave. She was not making soup or coffee. It happened because I was
acting bad. The only reason she heated up the water is to put it on me. She
hurt my hip when she was spanking me, she did it on accident, she was trying
to whoop me. She was meaning to hit me on my butt and I kept moving. She
was hitting me with a belt. My Mom Tina Clemons burned me on my privates
from a curling iron. My Mom poured hot water on me and burned me. She
never burned me with anything else.


 Outside the jury's presence, Rennison testified that prior to making the audio tape
of complainant's statement, he and caseworker Shropshire spent approximately one hour
trying to make him feel comfortable. Afterward, he initiated a conversation about
complainant's injuries and the burns to his genital area. He explained that he had
conducted tests at his home on water temperature and that it was very important that he tell
the truth. After complainant claimed that appellant inflicted the burns with a curling iron,
Rennison told him he was activating the tape recorder. Complainant told him that appellant
had heated up water in the microwave and put it on him for acting bad. When asked how
his "private parts" became burned, complainant answered that appellant had used a curling
iron. He also told Rennison that most of his injuries were caused by appellant. 

 Appellant argues the State violated the statutory notice requirement by not disclosing
that Rennison's conversation with complainant prior to making the audio tape was the
actual outcry statement. She contends she suffered harm by the admission of the tape
which she claims was the result of coaching and coercion and also questions the reliability
of the tape. The purpose of requiring notice is to prevent a defendant from being surprised
at trial by a victim's outcry statement. Upton v. State, 894 S.W.2d 426, 429
(Tex.App.-Amarillo 1995, pet. ref'd); Fetterolf v. State, 782 S.W.2d 927, 930
(Tex.App.-Houston [14th Dist.] 1989, pet. ref'd).

 The caseworker that accompanied Rennison when he questioned complainant
testified that he asked complainant if they could talk about the incidents that led to his
injuries and then explained that he needed to record the statement. She believed
Rennison's questions were open-ended questions, i.e., they did not suggest an answer. 
She claimed that complainant seemed comfortable speaking to him and was not threatened
or coerced in any manner. Furthermore, appellant's claim of surprise is without merit
because the contents of the taped statement were elaborations on the introductory
questions asked just prior to activating the recorder. We conclude that the State complied
with the requirements of article 38.072 and thus, the trial court did not abuse its discretion 
in admitting complainant's taped outcry statement. Issue five is overruled. 

 Accordingly, the judgment of the trial court is affirmed.


 Don H. Reavis

 Justice



Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.